(No. 13874.—Reversed and remanded.)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* HENRY WICKLIFF CRENSHAW, Plaintiff in Error.

*Opinion filed June 22, 1921.*

1. CRIMINAL LAW—*when malice is express and when implied in commission of murder.* Express malice is the deliberate intention to take the life of another, which is manifested by circumstances capable of proof, and malice is implied where no considerable provocation appears or where all the circumstances show an abandoned and malignant heart.

2. SAME—*definition of manslaughter.* Manslaughter is the killing of a human being without malice, express or implied, and without deliberation, and it must be either voluntary or involuntary.

3. SAME—*definitions of voluntary and involuntary manslaughter.* Voluntary manslaughter is the killing of a human being without malice but with a provocation apparently sufficient to make the passion irresistible, while involuntary manslaughter is the killing of a human being without intent to do so, in the commission of an unlawful act or a lawful act which might produce such consequences in an unlawful manner, where the unlawful act naturally tends to destroy life or where the involuntary killing is committed in the prosecution of a felonious intent.

4. SAME—*to constitute murder, death or great bodily harm must be the probable consequence of the unlawful act.* Malice necessary to constitute murder is presumed where the act resulting in the killing of another is deliberate and is likely to be attended with dangerous or fatal consequences, and to constitute murder, death or great bodily harm must be the reasonable or probable consequence of the act.

5. SAME—*when killing another by blow with the bare fist is not murder.* The striking of a blow with the bare fist on the side of the face or head is not likely to be attended with dangerous or fatal consequences where the assailant is not much larger or more powerful than his victim, and the fact that death results from such an assault will not warrant a conviction for murder, as the assailant is not presumed to have intended that death would be the natural consequence of his act, even though there is evidence that he threatened to kill his victim at the time he made the assault.

WRIT OF ERROR to the Circuit Court of Hancock county; the Hon. HARRY M. WAGGONER, Judge, presiding.

CLYDE P. JOHNSON, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, LEE SIEBENBORN, State's Attorney, and ALBERT D. RODENBERG, (O'HARRAS, WOOD & WALKER, of counsel,) for the People.

Mr. JUSTICE FARMER delivered the opinion of the court:

Henry Wickliff Crenshaw was indicted by the grand jury of Hancock county for the murder of Bertie L. Langford. The indictment charged the homicide was committed by defendant striking Langford with his right hand and clenched fist. Defendant pleaded not guilty. The jury found him guilty of murder in manner and form as charged in the indictment and fixed his punishment at imprisonment for fifteen years in the penitentiary. The court overruled a motion for a new trial and in arrest of judgment and rendered judgment on the verdict. Defendant has sued out a writ of error.

The homicide occurred August 25, 1920, while the parties were at a county fair at Carthage, Hancock county.

Defendant and the deceased had no personal acquaintance. They had attended the fair and accidentally met on the fair grounds about five o'clock in the afternoon. Deceased was with a party of men and women and they were proceeding to leave the fair grounds. Defendant was looking for the man he had come to the fair with, when he met deceased. He asked him if his name was Langford, and deceased replied it was. Defendant then asked deceased to step to one side with him, indicating a direction where there were very few people, and said he would like to talk to deceased. Deceased said he would rather meet him some other time and place. Defendant then asked Langford why he had been talking about him and threatening to kill him. Langford said he did not know he had done so. A number of witnesses testified defendant told Langford he had been talking about him, cursed him, called him a vile name and said if Langford would go with him to some other place he would kill him. Langford told defendant he was mistaken and turned to walk away. Defendant caught deceased by the arm, turned him partially around and said for two cents he would kill him right there. He immediately struck deceased on the side of his face or head with his clenched fist and knocked him down. Deceased was carried to an emergency hospital, where he died in a few minutes. A post-mortem disclosed a dislocation of the second and third vertebræ (or a broken neck) as the cause of death, and the proof shows that was attributable only to the blow struck by defendant. Immediately after striking deceased defendant walked away and mingled with the crowd.

It appears deceased and his wife were not living together and that she and defendant had been keeping company with each other. One witness testified on behalf of defendant that deceased had told him about a year before the homicide that if he knew defendant and found him he would have it out with him; that he would make him step some, and putting his hand on his right hip pocket said he

had the goods to make defendant step. Witness communicated the threats to defendant the same day they were made. Another witness testified that four or five weeks prior to the homicide deceased inquired of him if he had seen defendant, and said if he ever met him he would get defendant or defendant would get him; that at a subsequent time deceased said he hoped defendant would be at the fair; that he was going to get him, and showed the witness a 38-calibre revolver and said, "That is the baby that will get him." Witness, said he told defendant of the threats, and defendant said he had done nothing to deceased and would let him alone as long as he let defendant alone. Another witness testified that the morning of the homicide, between nine and ten o'clock, Langford said that if he and defendant ever came together there would be trouble and that it wouldn't be very far off. This was not communicated to defendant before the homicide. Defendant testified in his own behalf and did not differ materially with the witnesses for the State as to the conversation between him and deceased, except as to calling deceased a vile name and saying he would kill him. He testified when deceased turned away from him he touched him on the arm and told him he wanted him to quit following defendant around; that deceased then turned toward defendant, threw his hand to his hip pocket and defendant then struck him. The same witness who testified to threats of deceased the morning of the homicide, and who is a brother of deceased's divorced wife, testified he saw the parties at the time of the altercation; that he could not hear anything they said, but he saw defendant tap deceased on the shoulder and saw deceased throw his hand to his hip, whereupon defendant struck him. It is highly improbable from the testimony that any such action of the deceased occurred. The testimony of a considerable number of disinterested witnesses shows that deceased showed no anger and made no attempt to resent defendant's insulting language but started to get

away from him, when defendant caught him by the arm, caused him to partly turn around and then struck him on the side of the face or head. No weapon of any kind was found on deceased. The assault of deceased was wholly unprovoked and unjustified by any word or act at the time.

The only question discussed in the brief of defendant is whether the conviction for murder was justified. To constitute the killing murder it must be done with malice aforethought, express or implied. Express malice is the deliberate intention to take the life of another, which is manifested by circumstances capable of proof. It is implied where no considerable provocation appears or where all the circumstances show an abandoned or malignant heart. (Crim. Code, sec. 140.) Manslaughter is the killing of a human being without malice, express or implied, and without deliberation. It must be voluntary, caused by a provocation apparently sufficient to make the passion irresistible, or involuntary, in the commission of an unlawful act without due caution or circumspection. (Crim. Code, secs. 143, 144.) Involuntary manslaughter is the killing of a human being without intent to do so, in the commission of an unlawful act or a lawful act which might produce such consequences in an unlawful manner, where the involuntary killing happens in the commission of an unlawful act which naturally tends to destroy life or is committed in the prosecution of a felonious intent. (Crim. Code, sec. 145.)

The circumstances which distinguish murder from manslaughter have been passed upon by this court in many cases. Malice necessary to constitute a killing murder is presumed where the act is deliberate and is likely to be attended with dangerous or fatal consequences. (*Perry v. People,* 14 Ill. 496; *Friederich v. People,* 147 id. 310.) Death or great bodily harm must be the reasonable or probable consequences of the act to constitute murder. (*Adams v. People,* 109 Ill. 444; *Dunaway v. People,* 110 id. 333; *Crosby v. People,* 137 id. 325.) The striking of a blow with the fist on

the side of the face or head is not likely to be attended with dangerous or fatal consequences, and no inference of an intent to kill is warranted from the circumstances disclosed by the proof in this case. The act of defendant in striking deceased was unlawful, but it is clear from the evidence that it was not delivered with the intent of causing death. The People contend that proof of defendant's statement to deceased that if he would go with him he would kill him, or that for two cents he would kill him right there, shows the intent of the defendant was murder. Even though it may be said to indicate a desire on the part of defendant to take the life of deceased, his act in striking with the bare fist was not committed for the purpose of carrying into effect any intention of that kind which the defendant may have had in mind. The defendant is presumed to have intended the reasonable and probable consequences of his act, but death not being a reasonable or probable consequence of a blow with the bare fist he is not presumed to have intended it to produce that result, and if he did not, the crime would be manslaughter and not murder. In *People* v. *Mighell,* 254 Ill. 53, defendant was indicted for murder. The death resulted from a blow from the bare fist. The defendant was attempting to administer punishment to the deceased for insulting remarks made to a lady relative of defendant. The court said there was not the slightest reason to suppose defendant contemplated death or serious injury to the deceased; that the act would not, in its consequences, naturally tend to destroy life or that such a result could reasonably be anticipated. It was held the crime could not be murder but was manslaughter. That case, in principle, cannot be distinguished from this.

The People argue that the difference in the size of the two men was such that the blow was likely to be attended with fatal consequences. Defendant was five or six inches taller and about fifty pounds heavier than deceased. There might be a case in which the disparity in size and strength

of the parties might be so great that a blow delivered with a bare fist might reasonably be expected to result in dangerous or fatal consequences, but there was no such difference in the two men in this case that a blow with the fist by the larger man would naturally or probably cause death. The evidence was insufficient to warrant the conviction for murder.

The judgment is reversed and the cause remanded to the circuit court for a new trial.

*Reversed and remanded.*