(No. 63985.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. RANDY L. BRACKETT, Appellant.

*Opinion filed June 29, 1987.*

172

GOLDENHERSH, J., took no part.

Daniel M. Kirwan, Deputy Defender, and E. Joyce Randolph, Assistant Defender, of the Office of the State Appellate Defender, of Mount Vernon, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and Nathan P. Maddox, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE RYAN delivered the opinion of the court:

The defendant, Randy Brackett, was originally charged in the circuit court of Madison County with the rape, deviate sexual assault and aggravated battery of Mrs. Elizabeth Winslow. Approximately five weeks after the events giving rise to these charges, Mrs. Winslow died. The defendant was then additionally charged with four counts of murder. Pursuant to defendant's motion, the murder charges were severed from the original charges and separate bench trials were held. The defendant was convicted of rape and aggravated battery at the first trial. He was subsequently convicted of murder and sentenced to an extended term of 60 years. His separate appeals were consolidated in the appellate court, which affirmed the murder convictions and vacated the rape

and aggravated battery convictions. (*People v. Brackett* (1986), 144 Ill. App. 3d 442, 449.) We granted leave to appeal.

On the evening of October 20, 1981, defendant Randy Brackett, age 21, entered the home of Elizabeth Winslow, an 85-year-old widow, for whom he had previously done yard work. During the course of that evening, he raped and severely beat Mrs. Winslow, forced her to write him a check for $125, cooked himself some food and fell asleep for a time in an arm chair. He finally left in the early hours of the morning. The first policeman on the scene found Mrs. Winslow lying naked on the living room hide-a-bed. She was severely bruised about the face and appeared to have a broken arm and various other injuries to her body. She said she had been raped, choked and beaten.

She was admitted to the hospital, where medical examinations revealed she had a broken arm, broken rib, bruises on her face, neck, arms, trunk and inner thighs. There are no issues on appeal to this court involving the rape and aggravated battery convictions; therefore, it is unnecessary to recite the details of the physical and medical evidence involved in the proof of those charges. That evidence will be germane only to the extent that it may be involved in the issue on appeal concerning the cause of death.

Dr. Robert William Elliott was one of the doctors who treated Mrs. Winslow while she was hospitalized. Dr. Elliott had been Mrs. Winslow's physician for 20 years. He testified that prior to the events of October 21, 1981, Mrs. Winslow was a "feisty" old woman who lived alone and took care of herself. He further stated that during her stay in the hospital Mrs. Winslow became depressed and resisted efforts to feed her, and her condition progressively weakened. After receiving maximum benefit from hospital treatment, Mrs. Winslow was

transferred to a nursing home on November 13, 1981. Her prognosis was poor, according to Dr. Elliott, even though her injuries were healing. Dr. Elliott accounted for the poor prognosis by relating the effects of trauma to elderly patients and the depression of elderly patients when they are removed from their homes for any type of hospitalization. The nursing home staff noted Mrs. Winslow's continuing declining condition and reported to Dr. Elliott her refusal to eat. He, in turn, ordered a nasal gastric tube to be used to try to feed her. The staff reported back that they could not use the tube because Mrs. Winslow's nasal passages were too small, and her facial injuries made it too painful to insert. Dr. Elliott withdrew the order because he did not want to cause Mrs. Winslow any further pain. It was his medical opinion that her death was imminent. He testified that, to a reasonable medical certainty, the tube could not be inserted because of her injuries. Two days later Mrs. Winslow's family was called to the nursing home because her condition had worsened, she had become cyanotic (a condition where the extremities turn blue and the blood pressure drops) and they expected her to die.

The next day, November 24, 1981, Mrs. Winslow's family was with her in the nursing home while she was being served lunch. For approximately 20 minutes a nurse's aide was feeding her small portions of pureed food on a spoon, which Mrs. Winslow was accepting without choking or gagging in any way. She eventually spit out some vegetables, which the aide interpreted to mean that Mrs. Winslow did not want any more. The aide tried to give Mrs. Winslow ice cream but she noticed Mrs. Winslow had stopped moving her mouth. The nurse's aide went to summon the nurses, who determined Mrs. Winslow had died.

There was an autopsy conducted by Dr. Steven Neurenberger. He determined her immediate cause of

death to be asphyxiation, which resulted from six ounces of food being aspirated into her trachea. He found evidence of the internal abdominal bruises around the colon and kidney, a broken rib, and facial bruises. He testified that none of these injuries of themselves caused her death. He also testified as to the mechanics of clearing the trachea when food enters it. This requires a sufficient volume of air to be present in the lungs, which, when expelled, pushes the food out of the trachea and back into the mouth, thus preventing asphyxiation. He also testified that the pain associated with a broken rib generally inhibits deep breathing, which limits the amount of air available to the lungs. He further testified that the volume of food lodged in Mrs. Winslow's trachea was very large and would have been difficult for a normal, healthy person to expel. He stated the amount of food in her trachea would have led to her unconsciousness within 30 seconds, and death would have soon followed.

In this appeal, the defendant first contends he was not proved guilty of murder beyond a reasonable doubt because there was insufficient evidence to prove a criminal agency caused Mrs. Winslow's death. He also contends that even if there was sufficient proof of causation, he had no intent to kill, nor did he know his acts created a strong probability of death, nor could he have foreseen that death was a likely consequence of blows from his bare fists. We disagree and affirm the decisions of the circuit court of Madison County and the appellate court.

The State must prove that death was caused by a criminal agency. (*People v. Benson* (1960), 19 Ill. 2d 50, 58.) The defendant contends the State did not meet its burden of proof on this issue of causation. Briefly stated, the defendant claims that death was caused by an intervening event, namely asphyxiation, which was totally un-

related to the crimes of rape and aggravated battery, which the defendant acknowledges he perpetrated against Mrs. Winslow five weeks before she died.

It is a matter of common knowledge that a person can accidentally choke to death while eating. Moreover, that type of accidental death could be the type of intervening cause which would relieve a defendant of criminal responsibility for death. (W. LaFave & A. Scott, Criminal Law sec. 35, at 257 (1st ed. 1972).) The courts in Illinois have repeatedly held that an intervening cause completely unrelated to the acts of the defendant does relieve a defendant of criminal liability. (*People v. Meyers* (1946), 392 Ill. 355; *Cunningham v. People* (1902), 195 Ill. 550; *People v. Gulliford* (1980), 86 Ill. App. 3d 237; *People v. Paulson* (1967), 80 Ill. App. 2d 44.) The converse of this is also true: when criminal acts of the defendant have contributed to a person's death, the defendant may be found guilty of murder. (*People v. Schreiber* (1982), 104 Ill. App. 3d 618; *People v. Brown* (1978), 57 Ill. App. 3d 528.) It is not the law in this State that the defendant's acts must be the sole and immediate cause of death. *People v. Reader* (1962), 26 Ill. 2d 210, 213.

In this case, the initial trier of fact was the circuit judge. He ruled on the issue of causation. His findings of fact and judgment specifically held that the defendant's acts were a contributing cause of Mrs. Winslow's death, in that the defendant, through his criminal acts, set in motion a chain of events which culminated in her death. The appellate court affirmed his ruling on causation. We have held that when presented with a challenge to the sufficiency of the evidence, it is not the function of this court to retry the defendant. (*People v. Collins* (1985), 106 Ill. 2d 237, 261.) Rather, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) (People v. Collins (1985), 106 Ill. 2d 237, 261, citing Jackson v. Virginia (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) Causal relationship is a question of fact which should be left to the trier of fact (People v. Martin (1983), 112 Ill. App. 3d 486, 500), and we will not disturb this verdict unless this evidence is so unreasonable, improbable and unsatisfactory as to leave a reasonable doubt as to defendant's guilt (People v. Molstad (1984), 101 Ill. 2d 128, 133).

Cases concerning unrelated, intervening causes of death have been problematic in the law for hundreds of years. By the mid-1700's the doctrine was well established that "if a man receives a wound, which is not in itself mortal, but either for want of helpful applications, or neglect thereof, it turns to a gangrene, or a fever, and that gangrene or fever be the immediate cause of his death, yet, this is murder or manslaughter in him that gave the stroke or wound, for that wound, tho [sic] it were not the immediate cause of his death, yet, if it were the mediate cause thereof, and the fever or gangrene was the immediate cause of his death, yet the wound was the cause of the gangrene or fever, and so consequently is causa causati." (1 Hale, Pleas of the Crown 428 (S. Emlyn Ed.).) In our technological age, we have come to expect scientific explanations for all types of physical phenomena. In cases such as this, where the causal links are not immediately apparent, we frequently look to medical experts to assist the trier of fact in determining whether the defendant's acts constitute a contributing factor to the victim's death. (People v. Love (1978), 71 Ill. 2d 74, 81.) In this case the trier of fact heard factual testimony and opinion testimony from the victim's treating physician, the pathologist who performed the autopsy and the nursing home staff. We are

mindful that the weight of medical experts' opinions is gauged by the reasons given for their conclusions and the factual details they marshall to support them. (*People v. Brown* (1978), 57 Ill. App. 3d 528, 532.) We are not prepared to say, after a careful review of the record in this case, that the medical evidence and opinions presented to the trier of fact were so unsupported that the trier of fact was left to form his decisions on causation based upon nothing more than speculation and inference. (*People v. Benson* (1960), 19 Ill. 2d 50, 61.) Here there was uncontradicted evidence that the ability to expel food lodged in the trachea is directly related to the volume of air present in the lungs. The victim, due to her broken rib, was not able to breathe deeply, nor would she have had the capacity to expel the food. There was further uncontradicted evidence that the nasal feeding tube could not be used because of the beating the victim had received. Consequently, the nursing home staff was unable to use a feeding method that would have avoided the possibility of choking. Also, the victim's depressed, weakened, debilitated state was the direct result of the trauma associated with the attack upon her, and there was uncontradicted evidence to that effect. It was Dr. Elliott's opinion that she became too weak even to swallow.

Contrary to the defendant's contentions, we believe this is precisely the kind of case where the defendant takes his victim as he finds him. (*Cunningham v. People* (1902), 195 Ill. 550, 572; *People v. Schreiber* (1982), 104 Ill. App. 3d 618, 626.) There are many cases in this State where the victim's existing health condition contributed to the victim's death. However, so long as the defendant's acts contribute to the death there is still sufficient proof of causation, despite the preexisting health condition. (*People v. Fuller* (1986), 141 Ill. App. 3d 737; *People v. Turner* (1984), 127 Ill. App. 3d 784; *People v.*

*Martin* (1983), 112 Ill. App. 3d 486.) It appears to this court that a person's advanced age is as significant a part of his existing health condition as diabetes or hardening of the arteries.

The trial court placed great weight on the testimony of Dr. Elliott, as it was entitled to do. It was his testimony that this victim's advanced age affected her recuperative powers. Viewing all the evidence in a light most favorable to the prosecution (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789), there was no reversible error on the issue of causation. The trier of fact was entitled to find that the defendant, a 21-year-old male, 6 feet 3 inches tall and 170 pounds, who battered and raped an 85-year-old woman, set in motion a chain of events which contributed to her death.

The defendant next contends that even if the element of causation is established, he cannot be guilty of murder because he did not possess the requisite mental state necessary for a murder conviction under the statute. The defendant was charged under sections 9—1(a)(2) and 9—1(a)(3) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 9—1(a)(2), (a)(3)). The essence of these charges is either he knew his acts created a strong probability of death or great bodily harm, or he was committing a forcible felony (other than involuntary manslaughter), from which death resulted. The defendant was convicted by a general verdict, which means he is guilty of any good count in the indictment to which the proof is applicable. (*People v. Jones* (1975), 60 Ill. 2d 300, 309; *People v. Lymore* (1962), 25 Ill. 2d 305, 307-08.) Therefore, the defendant here need only defend against those sections of the murder statute charged in the indictment. We will not address that portion of the defendant's argument which revolves around intent under section 9—1(a)(1), since he was not charged under that section.

The defendant argues that the appellate court ignored a long-standing principle in this State, that death is not ordinarily contemplated as a natural consequence of blows from bare fists. (*People v. Crenshaw* (1921), 298 Ill. 412; *People v. Mighell* (1912), 254 Ill. 53; *People v. Gresham* (1979), 78 Ill. App. 3d 1003; *People v. Drumheller* (1973), 15 Ill. App. 3d 418.) He therefore asserts he could not know that blows from his bare fists created a strong probability of death or great bodily harm, as charged under section 9—1(a)(2). We do not see that the appellate court ignored this principle. While Illinois cases do stand for the proposition the defendant recites, these same cases also stand for the proposition that death may be the natural consequence of blows with bare fists where there is great disparity in size and strength between the two parties. Given the disparity in size and strength between the defendant and Mrs. Winslow, we find it difficult to give credibility to this argument that the defendant, who battered this victim with enough force to break bones, did not know that his acts created a strong probability of death or great bodily harm.

Finally, the defendant argues that Mrs. Winslow's death by asphyxiation was not a foreseeable consequence of his felonious acts. There are often cases in which the precise manner of death will not be foreseeable to the defendant while he is committing a felony. This does not relieve the defendant of responsibility. There are cases where the immediate cause of death was meningitis (*People v. Paulson* (1967), 80 Ill. App. 2d 44), or pneumonia (*People v. Gulliford* (1980), 86 Ill. App. 3d 237), or a heart condition (*People v. Fuller* (1986), 141 Ill. App. 3d 737). In each of these cases the defendant's felonious acts contributed to the victim's demise, and in each of these cases the defendant could not foresee the exact manner in which the victim would die. We hold here that

the defendant did not have to foresee that this victim would die from asphyxiation in order to be guilty of felony murder.

For the reasons stated, the defendant's conviction is affirmed.

*Judgment affirmed.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.