2016 IL App (3d) 140324

Opinion filed June 17, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2016

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-14-0324 Circuit No. 11-CF-1335 |
| | ) ) | |
| CHRISTOPHER M. YEOMAN, | ) ) | The Honorable Sarah F. Jones, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Presiding Justice O'Brien and Justice McDade concurred in the judgment and opinion.

**OPINION**

¶ 1     After a jury trial, defendant, Christopher M. Yeoman, was convicted of one count of second degree murder (720 ILCS 5/9-2(a)(2) (West 2010)) and three counts of aggravated battery (720 ILCS 5/12-4.6(a), 12-4(a), (b)(8) (West 2010)).  He was sentenced to concurrent prison terms of 18 years on the second degree murder conviction and 5 years on each of the aggravated battery convictions.  Defendant appeals, arguing that: (1) he was not proven guilty beyond a reasonable doubt of second degree murder; (2) the trial court erred in refusing to admit at trial evidence of a statement that the victim had made during anger management counseling

regarding a prior incident of road rage that the victim had been involved in; and (3) his convictions and sentences for the less serious offenses should be vacated based on one-act, one-crime principles. We vacate defendant's convictions and sentences for second degree murder and for two of the three aggravated battery charges (great bodily harm and public way). We affirm defendant's conviction and sentence for aggravated battery of a senior citizen. We remand this case to the trial court to enter a new sentencing order consistent with our decision in this appeal.

¶ 2                                                    FACTS

¶ 3        On June 2, 2011, defendant was involved in a road rage incident with the victim in this case, Frank Egas. The incident took place at about 4:30 p.m. on 135th Street, a public way, in Romeoville, Will County, Illinois. The incident allegedly started when defendant, who was stopped directly behind Egas at a traffic light, honked his horn to let Egas know that the light that they were both waiting for had turned green. In response, Egas allegedly gave defendant the finger. After Egas and defendant both turned right, Egas allegedly gave defendant the finger again, honked his horn, cut defendant off, and refused to let defendant pass, all of which allegedly took place several times. Defendant's wife and young children were in the vehicle with defendant at that time.

¶ 4        At some point, Egas and defendant were again stopped in the left hand turning lane of another intersection with a stoplight waiting for the light to change (135th Street) with defendant's vehicle again located behind Egas's vehicle. While they were waiting for the light, defendant and his wife got out of their vehicle, went up to Egas's vehicle, and briefly confronted Egas about his actions. After defendant and his wife returned to their vehicle, Egas got out, walked to the rear of his vehicle, and started yelling at defendant. Defendant got back out of his vehicle, and a confrontation ensued. During the confrontation, defendant punched Egas one time

2

in the face. That was the only blow that was struck during the entire confrontation by either party.

¶ 5    Egas was stunned or knocked out, fell back, and hit his head on the pavement. As onlookers tried to help Egas, defendant left the scene. Egas was disorientated and began throwing up. An ambulance was called and Egas was taken to the hospital. Tests revealed that Egas's skull was broken on the left front area of his forehead, that he had suffered a large scale hematoma at the top and front of his head, and that he had bleeding on both sides of his brain and within his brain. The tests also showed that there was no alcohol or drugs in Egas's system. In September 2011, three months after the incident occurred, Egas passed away as a result of his injuries.[1]

¶ 6    After Egas passed away, defendant was charged with two counts of second degree murder (Class 1 felonies), one count of aggravated battery of a senior citizen (a Class 2 felony), one count of aggravated battery on a public way (a Class 3 felony), and one count of aggravated battery causing great bodily harm (a Class 3 felony). One of the counts of second degree murder was later dismissed. Defendant claimed self-defense.

¶ 7    During the pretrial discovery process, defendant learned that in summer 2010, Egas had participated in group counseling for anger management and had been involved in a prior incident of road rage. In one of the group counseling sessions in September 2010, Egas told the group that someone had cut him off the previous week when he was driving; that he drove fast and

[1] A substantial amount of evidence was presented at trial regarding the progression of Egas's injuries and the complications that arose from those injuries leading up to Egas's death. We have not presented that evidence in detail here, however, because defendant does not dispute in this appeal that he caused Egas's death.

3

followed the vehicle until it stopped at an intersection; and that he jumped out of his car, ran up to the vehicle, and was "all set to do something" when he saw that it was a woman with a child. The woman and child were scared. Egas asked the woman if she knew what she had done. The woman responded that she had not seen Egas and apologized for cutting him off. Egas told the woman not to do that again. After Egas told the group about the incident, he was given feedback from some of the members of the group.

¶ 8        Defendant later filed a motion *in limine* seeking to admit at trial the statement that Egas had made at the group counseling session. Defendant sought to present that evidence through the testimony of a registered nurse who was present for the group counseling session and who had prepared the progress note for that session. Defendant asserted that the evidence was admissible as a statement against penal interest, an exception to the hearsay rule. The State objected. After a hearing, the trial court denied defendant's motion *in limine*. In so doing, the trial court found that the statement was hearsay, that it was not a statement against interest, and that there was no recognized hearsay exception that would allow for the admission of the statement.

¶ 9        The case proceeded to a jury trial in January 2014. Numerous witnesses were called to testify, including four witnesses who had seen the road rage confrontation take place. Defendant and his wife testified as well. As a whole, the evidence was conflicting as to whether defendant or Egas was the aggressor at the time that defendant punched Egas in the face. All or most of the eyewitnesses from the scene testified that Egas walked to the rear of his vehicle and stopped and that he did not swing or motion at defendant before defendant punched Egas in the face. Although most of those witnesses indicated that Egas's hands were up at the time, they stated that his hands were in more of a "What's going on?" or "What are you doing?" type of position, rather than in a striking or attack position, and that defendant raced over and struck Egas in the face.

4

¶ 10    Defendant and his wife, however, testified to the contrary. Defendant stated that Egas put his hands up and that he thought that Egas was going to hit him. Defendant's wife stated that Egas was standing in a fighting pose with his fists up close to his body by his shoulders, that Egas swung at defendant first, and that defendant swung back and hit Egas.

¶ 11    Regarding the general characteristics of defendant and Egas, the evidence indicated that defendant was 39 years old, that he had been a carpet installer for the past 22 years, that he was 5'7" tall, and that he weighed 160 pounds. As for Egas, the evidence established that he was almost 64 years old, that he was very active and had great mobility for his age, that he was 5'6" tall, and that he weighed 160 pounds as well.

¶ 12    After all of the evidence had been presented in this case and the attorneys had made their closing arguments, the trial court instructed the jury on the law. Among other things, the jury was instructed on self-defense. Defendant specifically declined to have the jury instructed on the uncharged lesser-included offense of involuntary manslaughter. After several hours of deliberation, the jury found defendant guilty of all four charges.

¶ 13    Defendant filed a motion for new trial, alleging, among other things, that he was not proven guilty beyond a reasonable doubt and that the trial court had erred in excluding evidence of the statement that Egas had made at the group counseling session. After a hearing, the motion for new trial was denied. Following a sentencing hearing, defendant was sentenced to concurrent prison terms of 18 years on the second degree murder conviction and 5 years on each of the aggravated battery convictions. Defendant filed a motion to reconsider sentence, which was later denied. This appeal followed.

¶ 14                                ANALYSIS

¶ 15                I. Sufficiency of the Evidence as to Second Degree Murder

5

¶ 16    As his first point of contention on appeal, defendant argues that he was not proven guilty beyond a reasonable doubt of second degree murder. Defendant asserts that the evidence was insufficient to prove the knowledge element of the offense—that defendant knew that his acts created a strong probability of death or great bodily harm. Defendant claims that there can be no such knowledge when an accused, who is about the same size as the victim, punches the victim only one time in the face with a bare fist. Rather, defendant contends that what happened in this case was a freak occurrence that did not constitute second degree murder. Based upon the alleged deficiency in the evidence, defendant asks that we reverse his conviction for second degree murder and enter a conviction instead for the uncharged lesser-included offense of involuntary manslaughter.

¶ 17    The State argues that defendant was proven guilty beyond a reasonable doubt and that his second degree murder conviction should be affirmed. The State disputes that the victim's injury or death in this case was a freak occurrence and asserts that when an individual runs at another person and strikes that person in the head with a "roundhouse" punch, the individual knows that the other person will likely fall to the ground and that there is a strong probability of, at the very least, great bodily harm and, possibly, death to that person. The State contends, therefore, that defendant's claim of lack of proof should be rejected. In the alternative, the State argues that if this court reverses the second degree murder conviction, the case should be remanded for defendant to be resentenced on the aggravated battery to a senior citizen charge and not for sentencing on the lesser-included offense of involuntary manslaughter. In making that argument, the State points out that defendant specifically rejected the giving of an involuntary manslaughter instruction at trial and asserts that defendant cannot now ask this court to consider a finding of guilt on that charge.

6

¶ 18    When faced with a challenge to the sufficiency of the evidence in a criminal case, the reviewing court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the elements of the crime proven beyond a reasonable doubt. *People v. Austin M.*, 2012 IL 111194, ¶ 107; *People v. Collins*, 106 Ill. 2d 237, 261 (1985). The reviewing court will not retry the defendant. *Austin M.*, 2012 IL 111194, ¶ 107. Determinations of witness credibility, the weight to be given testimony, and the reasonable inferences to be drawn from the evidence are responsibilities of the trier of fact, not the reviewing court. *People v. Jimerson*, 127 Ill. 2d 12, 43 (1989). A reviewing court will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it leaves a reasonable doubt of the defendant's guilt. *Austin M.*, 2012 IL 111194, ¶ 107.

¶ 19    In this particular case, defendant was charged with second degree murder under a knowing murder theory. Therefore, one of the elements that the State had to prove beyond a reasonable doubt to prevail on the charge was the mental state element of "knowledge" or "knowing"—that defendant knew that his acts created a strong probability of death or great bodily harm to the victim. 720 ILCS 5/9-1(a)(2), 9-2(a)(2) (West 2010); see also Illinois Pattern Jury Instructions, Criminal, No. 7.02S (4th ed. 2016). To act with the mental state of knowing, a defendant must possess the conscious awareness that his conduct is practically certain to cause the result. See 720 ILCS 5/4-5(b) (West 2010); Illinois Pattern Jury Instructions, Criminal, No. 5.01B (4th ed. 2000) (hereinafter, IPI Criminal 4th No. 5.01B). Although a defendant's mental state may be proven through either direct or circumstantial evidence, direct evidence is often not available, and defendant's mental state must be inferred from the surrounding circumstances, such as the character of the defendant's acts and the nature and seriousness of the victim's injuries. See *People v. Nibbe*, 2016 IL App (4th) 140363, ¶ 26; *People v. Lengyel*, 2015 IL App

(1st) 131022, ¶ 47. The determination of a defendant's mental state is generally a question of fact for a jury to decide and is particularly appropriate for resolution by a jury when the evidence on the issue is conflicting. See *People v. DiVincenzo*, 183 Ill. 2d 239, 252-54 (1998); *People v. Gresham*, 78 Ill. App. 3d 1003, 1007-08 (1979); *Nibbe*, 2016 IL App (4th) 140363, ¶ 26.

¶ 20   There is a long-standing general rule in this state that death is not ordinarily contemplated as a natural consequence of a blow or blows from a bare fist.[2] See, *e.g.*, *People v. Mighell*, 254 Ill. 53, 59 (1912) (reversing a defendant's murder conviction where the defendant punched the victim in the neck with a bare fist fracturing the base of the victim's skull and causing a hemorrhage in the victim's carotid artery); *People v. Crenshaw*, 298 Ill. 412, 416-18 (1921) (reversing a defendant's murder conviction where the defendant struck the victim one time in the side of the face or head with a bare fist breaking the victim's neck); *People v. Brackett*, 117 Ill. 2d 170, 180 (1987) (recognizing the general rule); *Gresham*, 78 Ill. App. 3d at 1007 (same); *Lengyel*, 2015 IL App (1st) 131022, ¶¶ 50-55 (reversing a defendant's second degree murder conviction where the defendant punched his father in the head four or five times with his bare fists; the defendant and his father were similar in size; the physical altercation was short; the defendant stopped punching his father as soon as he saw that his father was bleeding; the defendant's father died from a stroke and not directly from the blows inflicted by the defendant; and the defendant's father was conscious, coherent, and ambulatory after the attack); *Nibbe*, 2016 IL App (4th) 140363, ¶ 34 (reversing a defendant's second degree murder conviction where the

[2] Most of the cases cited discuss the general rule in terms of death, rather than great bodily harm. However, the supreme court's decisions in both *Mighell* and *Crenshaw* referenced harm other than death. See *Mighell*, 254 Ill. at 59 ("serious injury"); *Crenshaw*, 298 Ill. at 416-17 ("dangerous *** consequences").

defendant punched the victim once or twice in the face with a bare fist, the victim was not substantially smaller or weaker than the defendant, the victim died from falling backward and hitting his head on the concrete rather than directly from the defendant's punches, and the defendant had been drinking and was in an excitable state due to the victim entering the apartment area of defendant's friends without permission).

¶ 21 There are, however, some exceptions to the general rule that have been recognized over the years. *Nibbe*, 2016 IL App (4th) 140363, ¶ 28. For example, the courts have held that striking another person with a bare fist may constitute murder when there is a great disparity in size and strength between the defendant and the victim. See *Crenshaw*, 298 Ill. at 417-18 (recognizing the possibility of such an exception to the general rule); *People v. Ward*, 101 Ill. 2d 443, 451-52 (1984) (affirming the murder conviction of an adult defendant for the beating death of a four-year-old child, even after implicitly assuming, for argument's sake, that the injuries were inflicted with a bare fist); *Brackett*, 117 Ill. 2d at 180 (affirming the murder conviction of a 21-year-old defendant for the barehanded beating death of an 85-year-old woman); *Gresham*, 78 Ill. App. 3d at 1007-08 (recognizing that the barehanded beating death of a child by an adult could constitute murder); *People v. Drumheller*, 15 Ill. App. 3d 418, 421 (1973) (affirming the murder conviction of an adult defendant in the beating death of a 14-month-old infant); *Lengyel*, 2015 IL App (1st) 131022, ¶ 52 (recognizing the exception to the general rule); *Nibbe*, 2016 IL App (4th) 140363, ¶ 28 (same). Another exception to the general rule has been applied where the defendant inflicted multiple blows to the victim. See *People v. Rodgers*, 254 Ill. App. 3d 148, 151-54 (1993), *vacated on other grounds*, 156 Ill. 2d 564 (1994) (supervisory order), *readopted in pertinent part*, 265 Ill. App. 3d 1, 2 (1994) (affirming the defendant's murder conviction where the defendant punched the victim in the head numerous times while the victim

9

was sleeping); *Nibbe*, 2016 IL App (4th) 140363, ¶ 28 (recognizing the exception to the general rule).

¶ 22    After having considered the general rule noted above and the established exceptions in relation to the facts of the present case, we find that the evidence was insufficient to prove the knowledge element of the second degree murder charge. See *Mighell*, 254 Ill. at 59; *Crenshaw*, 298 Ill. at 416-18; *Brackett*, 117 Ill. 2d at 180; *Gresham*, 78 Ill. App. 3d at 1007; *Lengyel*, 2015 IL App (1st) 131022, ¶¶ 50-55; *Nibbe*, 2016 IL App (4th) 140363, ¶ 34. Regardless of how the verbal altercation between defendant and Egas started, there is no dispute in this case that defendant struck Egas only one time in the face with his bare fist. That conduct alone is not the type of conduct that would generally create a strong probability of death or great bodily harm to the victim. See *Mighell*, 254 Ill. at 59; *Crenshaw*, 298 Ill. at 416-18; *Brackett*, 117 Ill. 2d at 180; *Gresham*, 78 Ill. App. 3d at 1007; *Lengyel*, 2015 IL App (1st) 131022, ¶¶ 50-55; *Nibbe*, 2016 IL App (4th) 140363, ¶ 34. Defendant, therefore, could not have knowledge that such a result was practically certain to occur. See 720 ILCS 5/4-5(b) (West 2010); IPI Criminal 4th No. 5.01B; *Mighell*, 254 Ill. at 59; *Crenshaw*, 298 Ill. at 416-18; *Brackett*, 117 Ill. 2d at 180; *Gresham*, 78 Ill. App. 3d at 1007; *Lengyel*, 2015 IL App (1st) 131022, ¶¶ 50-55; *Nibbe*, 2016 IL App (4th) 140363, ¶ 34. In reaching that conclusion, we note that the Fourth District Appellate Court came to a similar conclusion on a case in which the material facts were nearly identical to that of the present case. See *Nibbe*, 2016 IL App (4th) 140363, ¶ 34. We, therefore, reverse defendant's conviction for second degree murder.

¶ 23    We need not determine whether a conviction for involuntary manslaughter should be entered against defendant in this case, since, as will be discussed later in this opinion, involuntary manslaughter would be a less serious offense than aggravated battery of a senior

citizen and the State concedes that all of the less serious offenses should be vacated on one-act, one-crime principles.

¶ 24          II. Exclusion of Egas's Statement About the Prior Incident of Road Rage

¶ 25          As his second point of contention on appeal, defendant argues that the trial court erred in refusing to admit at trial evidence of Egas's statement from group anger management counseling about his prior incident of road rage. Defendant asserts first that since he was claiming self-defense, the statement was relevant to show that Egas was the aggressor during the confrontation in corroboration of defendant's version of events. Second, defendant asserts that the statement was not excluded by the hearsay rule and was admissible under Illinois Rule of Evidence 803(4) (eff. Apr. 26, 2012) because the statement was made for the purpose of medical treatment. Defendant acknowledges that no Illinois case has stated that psychiatric treatment qualifies as medical treatment under Rule 803(4) but cites to cases from other jurisdiction in support of that conclusion. Third and finally, defendant claims that he was prejudiced by the trial court's erroneous exclusion of the statement because the statement was pivotal to the jury's appropriate determination of defendant's self-defense claim such that had the statement been admitted, the result of the trial might have been different. Based upon the alleged error in the exclusion of the evidence, defendant asks that we reverse his convictions and that we remand this case for a new trial.[3]

---

[3] In the briefs in this appeal, there is much argument back and forth between the parties as to whether this issue has been forfeited. Defendant asserts plain error and ineffective assistance of trial counsel as possible grounds for appellate review of this issue, despite any possible forfeiture. In addressing the ineffective assistance of counsel argument, the State points out that defense counsel asserted in the trial court that the statement was admissible as a statement for the

11

¶ 26        The State argues that the trial court's evidentiary ruling was proper and should be upheld. The State asserts first that the statement was not relevant because it did not pertain to a prior act of violence. Rather, the State suggests, defendant is merely speculating that the prior incident would have gotten violent if a female driver and child passenger had not been involved. The State also asserts that any potential relevance was undermined by the remoteness of the statement—it was made nine months before the current incident—and because of subsequent events—Egas later completed anger management counseling and had not engaged in a similar incident of road rage since that time. Furthermore, according to the State, the statement lacked relevance because no credible evidence was presented that Egas was the aggressor in the instant case or that defendant was acting in self-defense. Second, the State asserts that the statement was not admissible under Rule 803(4) because the statement was made for the purpose of anger management counseling and not for the purpose of medical treatment. Third, the State asserts that the statement was also not admissible because it was confidential in nature and entitled to protection under the health care confidentiality laws. Although the State recognizes that there is a homicide exception to those laws, the State posits that the exception does not apply here because the statement in question did not directly relate to the facts or immediate circumstances of the homicide in the present case. Fourth and finally, the State asserts that defendant was not prejudiced by the exclusion of the statement because the statement was ambiguous about what Egas intended to do when he reached the offending vehicle during the prior incident and because admission of the statement would not have changed the outcome of the trial in this case. For all

purpose of medical treatment, although defense counsel did not specifically refer to Rule 803(4). We believe, therefore, that the State itself has established that this particular issue was raised in the trial court and has not been forfeited on appeal.

12

of the reasons set forth, the State asks that we affirm the trial court's evidentiary ruling and that we reject defendant's arguments and assertions on this issue.

¶ 27 The determination of whether evidence is relevant and admissible is in the sound discretion of the trial court and will not be reversed on appeal absent an abuse of that discretion. *People v. Pikes*, 2013 IL 115171, ¶ 12; *People v. Morgan*, 197 Ill. 2d 404, 455 (2001); *People v. Illgen*, 145 Ill. 2d 353, 364 (1991). Under the abuse of discretion standard, "[t]he reviewing court owes some deference to the trial court's ability to evaluate the impact of the evidence on the jury." *People v. Donoho*, 204 Ill. 2d 159, 186 (2003). The threshold for finding an abuse of discretion, therefore, is a high one and will not be overcome unless it can be said that the trial court's ruling was arbitrary, fanciful, or unreasonable, or that no reasonable person would have taken the view adopted by the trial court. See *In re Leona W.*, 228 Ill. 2d 439, 460 (2008); *Donoho*, 204 Ill. 2d at 182. Reasonable minds can disagree about whether certain evidence is admissible without requiring a reversal of a trial court's evidentiary ruling under the abuse of discretion standard. See *Donoho*, 204 Ill. 2d at 186. If a trial court commits an abuse of discretion in the admission or exclusion of evidence, a new trial should be ordered only if the trial court's ruling appears to have affected the outcome of the trial. See *Leona W.*, 228 Ill. 2d at 460; *Troyan v. Reyes*, 367 Ill. App. 3d 729, 732-33 (2006).

¶ 28 When a defendant raises a theory of self-defense, appropriate evidence of the victim's aggressive and violent character (the victim's propensity for violence) is relevant for two distinct purposes. Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011) (codification of Illinois common law in homicide and battery cases when the accused raises a theory of self-defense and there is conflicting evidence of whether the accused was the aggressor (see Ill. R. Evid. 405, Comment (eff. Jan. 1, 2011)); Ill. R. Evid. 404(a)(2) (eff. Jan. 1, 2011); *People v. Lynch*, 104 Ill. 2d 194,

13

199-200 (1984); *People v. Hawkins*, 296 Ill. App. 3d 830, 835 (1998); *People v. Cruzado*, 299 Ill. App. 3d 131, 136 (1998). The first purpose is to show that the defendant's knowledge of the victim's violent tendencies affected the defendant's perception of, and reaction to, the victim's behavior. *Id*. In other words, the evidence is relevant to show the defendant's state of mind— that defendant acted reasonably in acting in self-defense. See *id*. For example, the same deadly force that would be unreasonable for a defendant to use during an altercation in response to the actions of a presumably peaceful person may be considered to be reasonable in response to similar behavior by a person who the defendant knew to have violent and aggressive tendencies. See *Lynch*, 104 Ill. 2d at 200. However, this particular purpose for the use of evidence of the victim's aggressive and violent character is relevant to a defendant's claim of self-defense only if the defendant knew of the victim's violent nature at the time of the incident (see *id*.), which is not the situation in the present case.

¶ 29    The second purpose for which appropriate evidence of the victim's aggressive and violent character is relevant when a defendant raises a theory of self-defense is to support the defendant's version of the facts where there are conflicting accounts of what happened. Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011); see also Ill. R. Evid. 404(a)(2) (eff. Jan. 1, 2011); *Lynch*, 104 Ill. 2d at 200; *Hawkins*, 296 Ill. App. 3d at 835; *Cruzado*, 299 Ill. App. 3d at 136. In other words, the evidence is relevant to support the defendant's claim that the victim was the aggressor. See Ill. R. Evid. 405(b)(2) (eff. Jan. 1, 2011); see also Ill. R. Evid. 404(a)(2) (eff. Jan. 1, 2011); *Lynch*, 104 Ill. 2d at 200; *Hawkins*, 296 Ill. App. 3d at 835; *Cruzado*, 299 Ill. App. 3d at 136. In that situation, it does not matter whether the defendant knew of the victim's propensity for violence when the incident occurred or when the defendant learned of that propensity. See *id*. As our supreme court noted in *Lynch*, if the jurors could see for themselves exactly what the defendant

14

saw at the time of the incident, this type of circumstantial evidence would not be necessary. *Lynch*, 104 Ill. 2d at 200. Unfortunately, however, in cases where self-defense is raised, the evidence as to what occurred is often incomplete and conflicting.[4] See *id*. An entire confrontation may happen in an instant, during which time, the witnesses may be able to form only a quick impression about what occurred and may not be able to analyze what happened in any great detail or remember and describe it with precision. See *id*. Conduct on the part of an alleged victim, which in hindsight may not have amounted to a deadly assault, may nevertheless have reasonably looked to the defendant like a deadly assault when the incident was occurring. See *id*. at 201. To decide what really happened, the jury may, in the trial court's discretion, need all of the available facts, including any appropriate evidence of the victim's aggressive and violent character. See *id*. at 200. Indeed, under the appropriate circumstances and in the trial court's discretion, the defendant may be entitled to have the jury determine the reasonableness of his behavior in light of any such evidence. See *id*. at 201.

¶ 30    In the present case, however, the evidence that defendant sought to admit did not constitute evidence of aggressive and violent character. See *Cruzado*, 299 Ill. App. 3d at 137. To the contrary, there was no indication in the prior statement that Egas made at the group counseling session that he did anything more than approach the offending vehicle and possibly yell at the driver. Such conduct is not sufficient to qualify as aggressive and violent behavior

---

[4] Although this sentence and the next several sentences that follow were stated in *Lynch* in relation to the specific facts of that case (see *Lynch*, 104 Ill. 2d at 200), we believe that the concepts that are stated would apply in general in many self-defense cases. We have, therefore, stated those concepts as basic principles, rather than as principles that were specific to the facts of *Lynch*.

15

under the law.  See *id*. (stating that neither yelling nor disorderly conduct constitutes violent behavior); compare *id*. with *Lynch*, 104 Ill. 2d at 203 (recognizing that battery is generally *prima facie* probative enough of aggressive and violent tendencies to be admissible).  We find, therefore, that the trial court properly excluded defendant's request to admit at trial evidence of the statement that Egas made at group counseling regarding his prior road rage incident.  See *Cruzado*, 299 Ill. App. 3d at 137 (because the evidence in question did not tend to show that the victim had a violent character, the evidence had no probative value in determining whether the victim or the defendant was the aggressor during the altercation).

¶ 31        Finally, having determined that the evidence at the group counseling session was not relevant under the circumstances of this case, we need not address the issue as to whether the evidence would be admissible under Illinois Rule of Evidence 803(4) (eff. Apr. 26, 2012).

¶ 32                III. Defendant's Convictions and Sentences on the Less Serious Offenses

¶ 33        As his final point of contention on appeal, defendant argues, and the State concedes, that defendant's convictions and sentences for the less serious offenses should be vacated under the one-act, one-crime rule.  See *People v. Johnson*, 237 Ill. 2d 81, 97 (2010) (a defendant may not be convicted of multiple offenses that are based upon the same single physical act; if a defendant has been convicted of two or more offenses based upon the same single physical act, the convictions and sentences for the less serious offenses must be vacated).  Accordingly, we vacate defendant's convictions and sentences for the less serious offenses in this case—aggravated battery on a public way and aggravated battery causing great bodily harm, both of which were Class 3 felonies.  See *id*.  Defendant's conviction on the remaining most serious offense, aggravated battery of a senior citizen, a Class 2 felony, still stands as does the sentence of five years in prison, which was the sentence imposed on that offense by the trial court.  We reject

defendant's request to remand the matter for resentencing on the Class 2 felony charge, although we do remand the case for the trial court to enter a new sentencing order that is consistent with our decision in this case.

¶ 34                                    CONCLUSION

¶ 35        For the foregoing reasons, we: (1) vacate defendant's conviction and sentence for second degree murder; (2) affirm defendant's conviction and sentence for aggravated battery to a senior citizen; (3) vacate defendant's convictions and sentences for aggravated battery on a public way and aggravated battery causing great bodily harm; and (4) remand this case for the trial court to enter a new sentencing order consistent with our ruling here.

¶ 36        Affirmed in part and vacated in part; cause remanded.