THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RANDY S. MIKYSKA, Defendant-Appellant.

Second District   No. 2—87—0802

Opinion filed February 24, 1989.

796

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, and G. Joseph Weller, of State Appellate Defender's Office, of Elgin, for appellant.

Dennis Schumacher, State's Attorney, of Oregon (William L. Browers, Robert J. Biderman, and John A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Following a jury trial, defendant, Randy Mikyska, was found guilty of reckless homicide (Ill. Rev. Stat. 1985, ch. 38, par. 9—3), for causing death by driving over the speed limit at an unreasonable speed and failing to respond to a sudden crisis. He was found not guilty of reckless homicide for driving under the influence of drugs. Defendant was sentenced to two years' imprisonment. He raises two issues on appeal: (1) whether he was proved guilty beyond a reasonable doubt; (2) whether he was denied a fair trial by evidence of his past use of illegal drugs. For the reasons below, we reverse.

At approximately 11 p.m., April 8, 1986, defendant was driving south in the right lane of Interstate 39, a 55-miles-per-hour highway in Ogle County, when he drove into the rear of a Ford Falcon that was traveling between 20 and 30 miles per hour in the right lane. The cars caught fire, and the driver of the Falcon, Harry Oltman, was killed.

At trial defendant testified that he was traveling about 55 miles per hour when he observed dim taillights approximately three-fourths of a mile away. After seeing the taillights, he checked the gauges on the dashboard, as well as the rearview mirror, both side mirrors, and around the blind spot to his left. He signaled to change lanes. After checking his blind spot, he saw the Falcon just in front of him so he braked and shifted down, but could not avoid hitting it. In a taped statement to police, defendant stated that when he first saw the taillights he had ample time to change lanes, but thought the Falcon was traveling at about the same speed as his car, about 55 miles per hour. He estimated he was about 45 feet behind the Falcon when he put on his blinker and checked his mirrors and his blind spot.

Defendant testified that before the accident, he had made his final delivery for his employer, a pharmaceutical supplier. Defendant's log book showed that his last delivery was made at a health center in Rockford at 10:50 p.m. The collision occurred 16 minutes later, at

11:06 p.m. Defendant agreed with the prosecutor's calculation that it would have been necessary to travel 105 miles per hour in order to travel the 28 miles from the last delivery point to the site of the accident in 16 minutes, but stated that the time indicated on the log book was inaccurate. He said he deliberately misrepresented the time because he was behind schedule.

Douglas Muchow testified he saw the fire and stopped to help. He said defendant appeared to have all his faculties about him and defendant asked him, "Where did that car come from? Why was he stopped in the middle of the road?"

Roxannne Charnock testified that at approximately 11 p.m. she was driving south on Interstate 39 at about 55 miles per hour when she approached the Falcon. She had to brake and slow down to about 40 miles per hour before she moved to the left lane to pass the Falcon. She estimated that the Falcon was going about 20 to 30 miles per hour. She stated that she was surprised that the car was going slower than normal, but she did not have difficulty passing the car.

State Trooper Michael Broome testified he was driving north on Interstate 39 at approximately 11 p.m. when he noticed the Falcon going south at a slow speed, which he estimated at 30 miles per hour. He continued to watch the car in his rearview mirror as he drove north looking for a spot to turn around. He saw a semitruck approach the Falcon at a quick pace and then move into the passing lane without problem to pass the Falcon. Broome watched the Falcon continue down the highway when he saw a fire in his mirror. He did not see defendant's car until he approached the accident site. Broome later conducted a visibility test near the accident site. He stated that at that point the road was a straight, level, four-lane highway. Broome testified that he sat two-tenths of a mile north of the accident site to watch a car drive by with its headlights off. He could see the car as it passed him and was able to see it as far as a half a mile past the site where there is a well-lit exit for highway 38.

State Trooper Terry Shanafelt testified for the State as an expert in accident reconstruction. He investigated the accident scene and concluded that if the Falcon's speed was between 20 to 30 miles per hour, defendant's car was traveling 89 to 99 miles per hour when he started braking and 82 to 94 miles per hour at impact. He observed the skid marks at the scene and found that defendant had braked his car 44 feet prior to impact.

Defendant submitted to a blood and urine test approximately four hours after the accident. Against defendant's continuing objection and after the denial of a motion to suppress, the State was allowed to in-

troduce the results of the tests. The blood test showed the presence of four drugs: (1) acetaminophen (Tylenol); (2) diazepam (Valium); (3) lidocaine (used as a local anesthetic); (4) pentobarbital (a sedative). It was determined that the acetaminophen and the diazepam were administered to defendant after the accident. No alcohol was found in the blood. The urine test showed traces of marijuana, though this was not quantified. Dr. John Murphy, a pathologist in charge of the chemistry and toxicology laboratories at Memorial Medical Center, testified that the level of pentobarbital found in defendant's blood, 1.8 milligrams, was within the therapeutic range of 1 to 5 milligrams. At the therapeutic level the drug would have its optimum effect. The Valium in defendant's blood, .4 milligrams, was below the therapeutic range of .5 to 1.5 milligrams and would not have impaired defendant's driving ability by itself, though it would intensify the effect of the pentobarbital, but Murphy could not say by how much. Murphy explained that these two drugs were sedatives designed to relax and calm a person. He said it was quite possible that a person under the therapeutic level would have slowed reflexes and reaction time. He concluded that a person under the therapeutic level could drive but would have to use extreme caution.

Dr. Murphy could give no opinion about the presence of marijuana found in defendant's urine because it was not quantified. Defendant's blood was not tested for marijuana, Murphy explained, because the State does not have the resources for such a test. He testified that it was possible for traces of marijuana to show up in the urine even when it was not present in the blood system; for an occasional marijuana user, the drug could be found in the urine up to 72 to 96 hours after ingestion. Dr. Murphy stated that marijuana would not be found in the blood if defendant had smoked marijuana 24 hours before the blood test, and that unless he had taken it within an hour of the blood test, it would not show up in his blood.

Dr. Larry Blum, a forensic pathologist who performed the autopsy on Harry Oltman, testified that a person's driving would be impaired if he or she was under the same level of drugs found in defendant.

Dr. O'Donnell, a doctor of pharmacology and expert for the defense, testified that defendant's driving ability would not have been impaired by any drugs found in defendant's system. He testified that a person would be impaired when the level of the drugs was toxic, not therapeutic. He said that at a therapeutic level it is not expected that a person will nod off or slur speech. At a level of impairment, on the other hand, a person would feel drowsy, and his or her speech might be slurred.

The State presented evidence, over defendant's objection, concerning defendant's history of drug and alcohol use by way of defendant's taped statement to the police taken about four hours after the accident. In that statement, defendant stated he smoked marijuana the night before the accident. He also stated he used alcohol almost every day after work and marijuana on the weekends. Further, he stated he smoked marijuana on the last job he had. He also talked about taking "street pills." When asked by a police officer if defendant was saying that he used illegal drugs, he responded yes.

■■■ Defendant first contends he was not proved guilty of reckless homicide beyond a reasonable doubt. A person commits reckless homicide if he kills a person while driving a motor vehicle and the acts which caused death are such as are likely to cause death or great bodily harm to some individual and are performed recklessly. (*People v. Griffith* (1978), 56 Ill. App. 3d 747, 750.) Recklessness is defined as follows:

> "A person is reckless or acts recklessly, when he consciously disregards a substantial and an unjustifiable risk that circumstances exist or that a result will follow, described by the statute defining the offense; and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the situation." (Ill. Rev. Stat. 1985, ch. 38, par. 4—6.)

To prove the offense of reckless homicide, there must be evidence that defendant knew of the danger of collision and recklessly collided with the decedent without employing the reasonable means at his disposal to avoid the accident. *People v. Brajcki* (1986), 150 Ill. App. 3d 506, 512.

■ Defendant argues that to prove recklessness, it must be proved that defendant acted willfully and wantonly when he collided with decedent. Though case law on this issue finds some courts using the phrase "willful and wanton" conduct as a standard for reckless homicide, this court made it clear in *People v. Wolfe* (1983), 114 Ill. App. 3d 841, 849-50, that the definition of recklessness does not require the State to prove willful and wanton conduct to prove recklessness. The court pointed out that the Criminal Code of 1961 did not use the term "willful and wanton" in defining recklessness (see Ill. Rev. Stat. 1985. ch. 38, par. 4—6) and that courts that had used the term "willful and wanton" were merely using the phrase interchangeably with the term "reckless." *Wolfe*, 114 Ill. App. 3d at 848-50.

■■ In reviewing the sufficiency of the evidence to sustain a conviction, the relevant inquiry is whether, viewing the evidence in the

light most favorable to the prosecution, any rational trier of fact would have found the elements of the crime beyond a reasonable doubt. (*People v. Williams* (1987), 118 Ill. 2d 407, 416.) The evidence in this case supports the jury's verdict.

Though defendant testified he was not driving over 55 miles per hour before the accident, the weight of the evidence clearly shows defendant was traveling well over the speed limit. Shanafelt testified that defendant's speed was between 89 to 99 miles per hour just before he started braking and at the point of impact it was between 83 to 94 miles per hour. He was able to determine the speed of defendant's car through various calculations involving factors such as the grade of the road, the distance the cars traveled after impact, the length of skid marks and the speed of decedent's vehicle, estimated at 20 and 30 miles per hour. In addition to Shanafelt's testimony, the defendant's log book establishes that defendant would have had to travel 105 miles per hour from his last destination to get to the accident site at the time he did.

■ Driving over the speed limit does not in and of itself constitute reckless homicide. (*People v. Frary* (1976), 36 Ill. App. 3d 111, 114.) But, a charge of reckless homicide may be justified by a combination of excessive speed and other circumstances which would indicate a conscious disregard, and the circumstances are such that a reasonable person would act differently under the same situation. (*People v. Bonzi* (1978), 65 Ill. App. 3d 927, 931-32.) "The indicium of conscious disregard need not be shown solely by the maneuvering of the motor vehicle. It may include the physical condition of the driver [citation] or the failure to keep a proper lookout [citation]." *People v. Boyle* (1979), 78 Ill. App. 3d 791, 797-98.

In addition to driving well over the speed limit, defendant failed to change lanes to avoid a car that he saw three-fourths of a mile ahead of him. Furthermore, he drove at an excessive speed at night when visibility was lower and at a time when he had a therapeutic level of a sedative drug in his system. Dr. Murphy testified it was quite possible the sedatives caused defendant's reflexes and reaction time to be slower than normal and that a person under these drugs would have to use extreme caution in driving a car. The fact that the jury acquitted defendant of driving under the influence of drugs does not mean that the jury completely discounted the drug evidence. Though insufficient to support the driving under the influence charge, this evidence is relevant as a factor in determining whether defendant's excessive speed and failure to respond to a sudden crisis were grossly unreasonable and disregarded a substantial risk.

■ Defendant argues he cannot be guilty of reckless homicide because the evidence showed that he attempted to avoid the collision by braking before he hit the car. This fact does not negate defendant's criminal recklessness. Defendant observed decedent's car from three-fourths of a mile, yet he did not apply his brakes until he was within 44 feet of the car. Considering defendant's excessive speed, his attempt to avoid the accident by braking within 44 feet of decedent's car constitutes a gross deviation from the standard of care that a reasonable person would exercise in such a situation.

Defendant also contends his conduct was not criminally reckless because it was not forseeable that a car would be traveling 20 to 30 miles per hour on a 55-miles-per-hour highway. Though it may have been unexpected to find a car traveling at such a slow rate of speed on the highway, the decedent's conduct cannot be attributed to the cause of this accident where defendant stated that he saw the car from three-fourths of a mile away and that he had ample time to change lanes. Furthermore, defendant testified he was aware that there was a truck stop near the accident site as well as an exit ramp a short distance south of the site and that one could expect to find vehicles moving slowly on this stretch of the road. Also, two other vehicles were able to pass decedent's car without difficulty.

The cases cited by defendant are distinguished from this case. In each, the decedent's unexpected conduct was a significant contributing factor to the cause of death. In *People v. Frary* (1976), 36 Ill. App. 3d 111, defendant was following closely behind a motorcycle. Both vehicles were traveling about 75 miles per hour. The motorcycle began to slow down and then went out of control and fell on its side. Defendant could not avoid hitting the motorcycle. The court reversed defendant's conviction for reckless homicide. (*Frary*, 36 Ill. App. 3d at 114-15.) This case is not like *Frary* because here defendant had more than enough time to avoid hitting decedent's car by simply moving to the passing lane. Unlike *Frary*, there is no evidence to suggest that decedent's car slowed down suddenly in front of defendant's. In *People v. LaCombe* (1982), 104 Ill. App. 3d 66, 72-74, the defendant's conduct of driving his truck on an athletic field and accelerating during turns did not support a reckless homicide conviction where the passenger was killed after he climbed out of the truck and fell off. Here again, the main factor that caused the accident was the unexpected conduct of the decedent.

■■ ■ In his second issue, defendant contends the trial court erred in allowing evidence of defendant's past use of legal and illegal drugs because it was irrelevant and highly prejudicial. The test of

whether evidence is relevant, and therefore admissible, is whether it tends to make the question of guilt more or less probable. (*People v. Ward* (1984), 101 Ill. 2d 443, 455.) Evidence may be rejected as irrelevant if it has little probative value due to its remoteness, uncertainty, or possible unfair prejudicial nature. (*Ward,* 101 Ill. 2d at 455.) Evidence of collateral crimes or evidence suggesting prior criminal conduct is inadmissible if relevant merely to establish the defendant's propensity to commit crimes. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 137.) Such evidence overpersuades the jury, which might convict the defendant only because it feels he or she is a bad person deserving punishment. *Lindgren,* 79 Ill. 2d at 137.

● In this case, there was extensive testimony concerning defendant's history of illegal drug use. It is well recognized that evidence of a defendant's prior narcotics use constitutes evidence of criminal conduct. (*People v. Carlson* (1982), 92 Ill. 2d 440, 448; *People v. Novak* (1965), 63 Ill. App. 2d 433, 443.) The State contends this evidence was properly admitted under the exception that other crimes evidence is admissible if relevant to demonstrate knowledge, intent, motive, design, plan or identification. (*Lindgren,* 79 Ill. 2d at 137.) The State argues that evidence of defendant's history of drug use is relevant to show absence of mistake since defendant testified that he did not know how the sedative drugs got into his system. Clearly, any evidence tending to establish how and when these drugs were taken is relevant to the charge that defendant was operating a car while under the influence of drugs. The evidence admitted concerning defendant's drug history, however, was in no way limited to this purpose.

The court allowed into evidence testimony by a nurse that defendant told her that Tylenol would not help him because he had "been on morphine for a couple of years." There was absolutely no evidence to show that defendant was on morphine at the time of the accident. Neither blood nor urine tests showed the presence of this drug. Not only was this evidence clearly irrelevant, but it was also highly prejudicial since the lay person's opinion of a person on morphine would likely be that the person was an illegal drug user.

The court also admitted defendant's taped statement to police, where he talks at length about his history of drug use. Some of defendant's statements are excerpted below:

"OFFICER: How often do you use drugs?

DEFENDANT: What types?

OFFICER: You tell me.

DEFENDANT: Nicotine every day. Alcohol almost every day, after work, of course. Ah. tetrahydrocannabis, marijuana,

um, maybe on the weekends if somebody's got it; if not, you know, if I happen or maybe, you know, score an eighth, or something, you know, I'll smoke a joint when I get home from work while I'm drinking my beer watching the news or MASH, or whatever on TV. Other than that, the only time I take any type of pill would be if, you know, I needed it. Like I say, just suppose a friend of mine had some Seconal or something on him, and you know, I had, you know, twisted my finger pretty bad or something to cause me a lot of pain and aspirin didn't do anything for it, I might go and buy a couple pills off of him.

\* \* \*

OFFICER: Then again, I would say that you're telling me that you do, in fact, at time use illegal drugs?

DEFENDANT: Yes, I do.

\* \* \*

OFFICER: So are you in the habit of smoking before you go to work? Or on the way to work?

DEFENDANT: Oh, no. \*\*\* not with the job I have now, no, I haven't. Last job I had, yes. I smoked marijuana on the job."

■■■ ■ Defendant's past use of drugs is not relevant to the question of whether defendant was under the influence of drugs at the time of the accident. His past use does not tend to prove that he was under the influence at the time of the accident. It is pure speculation to conclude otherwise. Other crimes evidence cannot be admitted if the grounds for establishing its relevance are speculative. (*Lindgren*, 79 Ill. 2d at 140.) Moreover, these statements were also highly prejudicial because they likely created an image of defendant as a bad person.

■■■ In his statement defendant also states that he smoked marijuana the night prior to the accident. The State contends that this was relevant because defendant's urine test showed an unquantified amount of marijuana. The State did not test for marijuana in the blood stream. Dr. Murphy testified that without testing the blood for marijuana there is no way of knowing whether the marijuana was in defendant's blood stream at the time of the accident. It was possible that the marijuana would be found in the urine but would not have been in the blood stream. Dr. Murphy also stated that if a person smoked marijuana 24 hours prior to giving a blood test that marijuana would not be in the blood. The State presented no other evidence to show that defendant was under the influence of marijuana at the time of the accident. Given that the doctors could not give an opinion about whether defendant was under the influence of marijuana, the evidence

that he smoked it the night before and that it was found in his urine is not probative of his state of mind at the time of the accident. Furthermore, it was highly prejudicial because it planted the seed for speculation that defendant might have smoked marijuana closer in time to the accident. In *People v. Gosse* (1983), 119 Ill. App. 3d 733, 737, this court held that evidence of a nominal consumption of alcohol and cannabis without more or without any showing that defendant's mental and physical abilities were impaired is so inflammatory as to constitute reversible error. As in *Gosse*, the admission of this evidence was error.

We do not agree with the State's contention that the admission of defendant's past drug use was harmless error. The State argues this evidence was no more prejudicial than admissible evidence concerning the drugs found in defendant's blood. We are not persuaded. First, the State incorrectly assumes that evidence that defendant smoked marijuana the night before the accident was admissible. Furthermore, the repeated references to defendant's past use of marijuana and other illegal drugs was much more prejudicial than any admissible evidence concerning the drugs found in his system. The sedative drugs found in defendant's blood were not narcotics. They were mild tranquilizers commonly used by people who are not illegal drug users. Evidence concerning when defendant may have taken these drugs does not create the degree of prejudice created by evidence that defendant is a frequent user of marijuana and other illegal drugs. This evidence painted defendant as a bad person and perhaps even a reckless person. "It needs no extended discussion to demonstrate that the use of narcotics is regarded by the major part of society with aversion and contempt, and that references to the matter undoubtedly prejudice [a] defendant in the eyes of the jury." *Novak*, 63 Ill. App. 2d at 442-43.

Nor do we agree with the State's argument that the jury's acquittal on driving under the influence of drugs shows that it was not influenced by this evidence. The driving under the influence charge required the jury to find that defendant could not drive safely under the influence of the drugs found in his system. Evidence of past drug use would not have influenced the jury on this charge because the evidence clearly showed that defendant could have driven safely under the drugs found in his system if he used extreme caution. There is a much greater likelihood that prejudicial evidence influenced the jury on the charge of driving too fast and failing to respond to a sudden crisis since this is a more general charge of recklessness which required the jury to weigh conflicting and competing evidence.

The admission of evidence of other crimes carries a high

risk of prejudice and ordinarily calls for reversal. (*Lindgren*, 79 Ill. 2d at 140.) A conviction will be upheld only if the properly admitted evidence is so overwhelming that no fair-minded jury could have voted for acquittal. (*Lindgren*, 79 Ill. 2d at 141.) The evidence in this case is not so overwhelming. There were no witnesses to the accident. Though the evidence tended to show that defendant was driving at an excessive rate of speed, it is also clear that defendant was caught by surprise when he came upon the victim's car that was traveling only 20 to 30 miles per hour on the highway. Furthermore, the State's doctors stated that the sedative drug level found in defendant's blood was at a low therapeutic level, and defendant's expert, Dr. O'Donnell, testified that the drugs would not have had any significant effect on defendant's ability to drive. Where the evidence was not overwhelming, the admission of irrelevant and prejudicial evidence of defendant's past drug use and marijuana use the night before the accident denied defendant a fair trial. We, therefore, reverse the judgment and remand the cause.

The judgment of the circuit court is reversed, and the cause is remanded for new trial.

Reversed and remanded.

NASH and McLAREN, JJ., concur.