THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID P. GIERE, Defendant-Appellant.

Second District   No. 2—88—0784

Opinion filed December 15, 1989.

John F. Donahue, of Law Offices of Donahue, Sowa & Bugos, of Lisle, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE REINHARD delivered the opinion of the court:

Defendant, David P. Giere, was charged by indictment in the circuit court of Du Page County with one count of reckless homicide (Ill. Rev. Stat. 1987, ch. 38, par. 9—3) and one count of driving while under the influence of alcohol (DUI) (Ill. Rev. Stat., 1986 Supp., ch. 95½, par. 11—501(e)). Following the dismissal of the DUI count prior to trial, defendant was found guilty in a jury trial of reckless homicide and was sentenced to a two-year term of imprisonment.

On appeal, defendant raises four issues: (1) whether the trial court erred in admitting evidence of his blood-alcohol content where he did not consent to having his blood tested; (2) whether the trial court erred in denying defendant's request for a pretrial hearing as to the admissibility of the blood-alcohol test results; (3) whether the evidence established beyond a reasonable doubt that defendant committed reckless homicide; and (4) whether the trial court abused its discretion in

sentencing defendant to two years' imprisonment.

The following facts were adduced at trial. Defendant's prosecution stems from an incident on August 17, 1987, in Naperville, Illinois, where the vehicle he was driving collided with a tow truck in which the deceased, Gordon McLelland, was the only occupant. On the night of the incident, defendant had been at the Two Rivers Sports Bar prior to the accident. According to Mary Koch, the bartender who had served defendant, defendant had consumed three beers and a shot of Grand Marnier liqueur while at the bar between 10 p.m. and 1 a.m. She opined that defendant was intoxicated and refused to serve him further. Defendant left shortly after 1 a.m.

Mr. Chris Rials, who was driving north on Washington Street in Naperville after 1 a.m. on August 17, 1987, observed defendant drive his van out of the parking lot of the bar and proceed north on Washington Street, following Rials. Defendant continued to follow Rials until Washington became a four-lane street, at which time defendant passed Rials' vehicle. According to Rials, defendant's vehicle previously was two to three car lengths behind his, and defendant had his bright lights on. At the point when defendant passed him, Rials was travelling at approximately 45 miles per hour and defendant was driving 10 to 15 miles per hour faster than Rials. The speed limit is 40 miles per hour at that point in the roadway.

When defendant's van was approximately 200 yards ahead of Rials' vehicle, Rials observed it apparently strike something in the roadway. Rials did not see any lights or any objects ahead of the van prior to the collision. Rials observed no skid marks behind the van at the collision site. The road was wet, but visibility was good. An unidentified witness told one of the police officers at the scene that he observed a tow truck sitting in the northbound lane without any lights on and that the van struck it.

Another witness, who resided in a house adjacent to Washington Street, stated that he did not observe the tow truck sitting on Washington Street, but did see defendant's van driving northbound prior to the accident. After hearing a crash, the witness went to his window and observed the tow truck, with no lights on, rolling and defendant's van sitting in the street.

Defendant's van struck the rear of the tow truck, sending it rolling into a nearby townhouse. The tow truck became engulfed in flames and its driver, Gordon McLelland, died as a result of the fire.

According to Dale Cibula, whose vehicle had been towed by McLelland earlier that evening at about 12:45 a.m., McLelland was drinking a can of Miller Lite beer and there were a couple of empty

Miller Lite beer cans on the floor of the tow truck as well as two unopened cans. Cibula smelled the odor of alcohol on McLelland and was of the opinion that McLelland was intoxicated. He had driven with McLelland to a Shell station near the accident scene where his car was towed. The headlights on the tow truck were malfunctioning. While he was walking home, Cibula heard the collision. Five Miller Lite beer cans were observed on the roadway at the scene of the accident. The parties stipulated that the postmortem results of McLelland's blood-alcohol test indicated a blood-alcohol content of .18.

Numerous witnesses, including police officers, an emergency room nurse, and an emergency room physician who treated defendant, testified that defendant was under the influence of alcohol. Defendant had bloodshot, glassy eyes, slurred speech, and the strong odor of alcohol on his breath. Defendant told one of the officers that he had shared a couple bottles of wine with his wife earlier in the evening. Defendant, however, did not testify at trial.

Although defendant refused to consent to the withdrawal of a blood sample when asked by the arresting officer, an emergency room nurse, Mary Ellen Reeder, took two samples from defendant's left arm at the request of the arresting police officer. Reeder used a nonalcohol solution to disinfect defendant's arm prior to drawing the blood samples. The samples indicated that defendant's blood-alcohol content was .21. According to Reeder, there was an intravenous solution (IV) in defendant's right arm at the time she drew the blood from defendant's left arm.

Although the evidence is not entirely clear as to which arm was involved, paramedics stated an IV was started on defendant at the accident scene. There was no evidence offered by defendant to show that the blood test was taken from the same location as the IV. An isopropyl alcohol solution was used to disinfect defendant's arm prior to starting the IV. According to one of the paramedics who attended to defendant at the scene, isopropyl alcohol evaporates from the skin, and Dr. Phillip Serne testified that isopropyl alcohol has a minimal effect on a test for blood-alcohol content. Apparently blood was also drawn from defendant at the hospital but prior to Reeder's drawing blood, and it is not known from which arm the blood was drawn or whether an alcohol solution was used prior to drawing the blood or whether the blood was drawn from the same location on both occasions.

While the common-law record and the evidence at trial do not indicate that defendant was initially arrested for DUI, the record of the hearing on the motion to suppress statements does disclose that he

was placed under arrest for DUI in the ambulance prior to reaching the hospital. As the State does not dispute that the initial arrest was for DUI, we will accept that as fact even though the parties have not properly supplemented the record with the trial court record of this charge.

Prior to trial, defendant filed a motion *in limine* seeking to bar admission of the blood-test results based, *inter alia*, on noncompliance with section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1) and the rules and regulations of the Department of Public Health and on defendant's failure to consent to the test. The State moved to strike defendant's motion, arguing that section 11—501.2 and the Department's rules and regulations are inapplicable to a reckless homicide prosecution and that defendant's consent is unnecessary for a blood sample in a reckless homicide case. Defendant requested a hearing on his motion *in limine* which was denied. The trial court, however, stated that it would consider the admissibility of the blood-alcohol tests during trial and under the ordinary rules of admissibility.

We first address the issue of whether it was error to admit evidence of defendant's blood-alcohol content absent his consent to having his blood tested. Defendant contends that section 11—501.1 of the Vehicle Code requires consent before a blood test may be completed and that such requirement applies here, where defendant was arrested for DUI but prosecuted for reckless homicide.

■ A compulsory blood test, taken without the consent of the donor, does not violate any constitutional right of the donor, and absent a more limiting statutory provision, is admissible as evidence of intoxication. (*People v. Todd* (1975), 59 Ill. 2d 534, 545, 322 N.E.2d 447; *Village of Algonquin v. Ford* (1986), 145 Ill. App. 3d 19, 21, 495 N.E.2d 595.) Furthermore, this court has held that there is no statutory requirement of consent before blood-alcohol test results may be admitted in a DUI prosecution since that requirement was abolished by the General Assembly effective January 1, 1982. *People v. Brown* (1988), 175 Ill. App. 3d 725, 727, 530 N.E.2d 71; *Village of Algonquin v. Ford* (1986), 145 Ill. App. 3d 19, 22, 495 N.E.2d 595; see also *People v. Eaves* (1988), 174 Ill. App. 3d 911, 914-15, 529 N.E.2d 277.

■ In this case, defendant, citing *People v. Romano* (1985), 139 Ill. App. 3d 999, 487 N.E.2d 785, argues, contrary to *People v. Brown* and *Village of Algonquin v. Ford,* decided subsequent to *Romano* and cited above, that section 11—501.1 requires consent before a blood test may be admitted into evidence for a reckless homicide prosecution following an arrest for DUI. There is nothing, however, in either

section 11—501 or section 11—501.1 that requires consent before a blood test may be taken in a DUI or reckless homicide prosecution. To the extent that *People v. Romano*, relying on *People v. Frazier* (1984), 123 Ill. App. 3d 563, 463 N.E.2d 165, holds that section 11—501.1(c) requires the consent of the individual before blood tests could be taken (*Romano*, 139 Ill. App. 3d at 1007, 487 N.E.2d at 791), we do not follow that holding, noting, in addition, that section 11—501.1(c) was amended in 1985 by Public Act 84—272, effective January 1, 1986, which took out the language "none should be given," relied on by the *Frazier* court.

Section 11—501.1, as currently in effect, is a provision which governs only the implied consent to take a blood-alcohol test of a motor vehicle driver arrested for a DUI violation under section 11—501 or a similar provision of a local ordinance and the statutory summary suspension of the privilege to operate a motor vehicle for the refusal to take the test or the disclosure upon testing of a blood-alcohol content of .10 or more. Section 11—501.1 is not implicated here as statutory summary suspension is not involved or at issue.

We observe that while another statutory provision, section 11—501.2 of the Vehicle Code, governs the admissibility of evidence of blood-alcohol tests, by its terms it applies only to a DUI offense under section 11—501 or a similar local ordinance and does not apply to a prosecution for reckless homicide, as is the case here. (*People v. Murphy* (1985), 108 Ill. 2d 228, 232-34, 483 N.E.2d 1288.) The ordinary standards of admissibility apply in reckless homicide prosecutions. (*Murphy*, 108 Ill. 2d at 234, 483 N.E.2d at 1290.) As defendant does not raise herein any issue of the admissibility of the evidence, but only contends that section 11—501.1 requires his consent before a blood test is taken, we hold for the foregoing reasons that section 11—501.1 does not require defendant's consent to a blood test in this case.

Defendant next contends that it was error to deny him a pretrial hearing on his motion *in limine* contesting the admissibility of the blood-alcohol test results. At the time the motion was made, the DUI charge was still pending against defendant. However, prior to trial, that charge was dismissed.

A trial judge has the discretion to reserve ruling on evidentiary matters until they are presented at trial (*People v. Escobar* (1988), 168 Ill. App. 3d 30, 43, 522 N.E.2d 191), and it is also within the court's discretion to determine whether the interests of justice require that the hearing of a preliminary matter be conducted outside the hearing of the jury. (M. Graham, Cleary & Graham's Handbook of

Illinois Evidence §104.3, at 33 (4th ed. 1984).) In exercising its discretion, the trial court must weigh the potential for prejudice derived from the jury's hearing the evidence against such a trial concern as waste of time caused by taking the same testimony twice. M. Graham, Cleary & Graham's Handbook of Illinois Evidence §104.3, at 33 (4th ed. 1984).

■ Here, the trial court expressed its concern that a hearing would require all of the witnesses to testify at the hearing and again at the trial. The court could, on the other hand, identify little, if any, potential prejudice from the jury hearing the foundational evidence necessary for the introduction of the blood-alcohol test results during the trial. We believe the trial court exercised its discretion properly under these circumstances. After concluding that the blood-alcohol test results in this reckless homicide prosecution need not meet the requirements of either section 11—501.1 or section 11—501.2 of the Vehicle Code, the court correctly determined that the blood-alcohol test results need only meet the ordinary standards of admissibility. (*People v. Emrich* (1986), 113 Ill. 2d 343, 351, 498 N.E.2d 1140.) As such, it was a proper exercise of discretion to consider the admissibility of such test results during trial only, particularly where conducting a pretrial hearing on the issue of admissibility would have been duplicative. The record discloses the State presented a proper foundation for admission of this evidence and defendant was provided an adequate opportunity at trial to cross-examine the witnesses to challenge the foundation.

■ Defendant also contends that the State failed to prove him guilty beyond a reasonable doubt of reckless homicide. The State's burden of proof in a criminal trial is to prove guilt beyond a reasonable doubt, not beyond any possibility of doubt. (*People v. Madej* (1985), 106 Ill. 2d 201, 218, 478 N.E.2d 392.) When presented with a challenge to the sufficiency of the evidence, it is not the function of the reviewing court to retry the defendant; rather, the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Brackett* (1987), 117 Ill. 2d 170, 176-77, 510 N.E.2d 877.

■ A person commits reckless homicide when he unintentionally kills a person while driving an automobile and the acts which caused death are performed recklessly so as to create the likelihood of death or great bodily harm to some person. (*People v. Mikyska* (1989), 179 Ill. App. 3d 795, 800, 534 N.E.2d 1348; *People v. Sleboda* (1988), 166 Ill. App. 3d 42, 55, 519 N.E.2d 512.) Reckless conduct occurs when an

individual consciously disregards a substantial and unjustifiable risk that his acts are likely to cause death or great bodily harm to some individual and where such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in such a situation. (*Sleboda*, 166 Ill. App. 3d at 55, 519 N.E.2d at 520.) While evidence of intoxication does not alone establish recklessness (*People v. Romano* (1985), 139 Ill. App. 3d 999, 1012, 487 N.E.2d 785), it is probative of recklessness, and improperly driving an automobile while intoxicated may constitute reckless conduct (*Sleboda*, 166 Ill. App. 3d at 55, 519 N.E.2d at 521). The reckless homicide statute now provides that being under the influence of alcohol at the time of the alleged violation "shall be *prima facie* evidence of a reckless act." (Ill. Rev. Stat. 1987, ch. 38, par. 9—3(b); *People v. Jackson* (1987), 118 Ill. 2d 179, 190, 514 N.E.2d 983.) Additionally, although excessive speed, by itself, is not always sufficient to sustain a conviction of reckless homicide, a charge of reckless homicide may be justified by a combination of excessive speed and other circumstances which would indicate a conscious disregard of a substantial risk likely to cause death or great bodily harm to others, and the circumstances are such that a reasonable person would act differently under the same situation. *People v. Evans* (1984), 124 Ill. App. 3d 634, 639-40, 464 N.E.2d 1083.

■ In the present case, the evidence clearly establishes that defendant was intoxicated at the time of the accident. Several witnesses testified that he had a strong odor of alcohol on his breath, bloodshot and glassy eyes, and slurred speech. Numerous witnesses opined that defendant was intoxicated shortly after the accident. The bartender, Mary Koch, testified that defendant consumed three beers and a shot of liqueur shortly before the accident and that she had refused to serve him any more alcoholic beverages due to his intoxication. Defendant admitted to drinking wine earlier in the evening. Moreover, defendant's blood-alcohol was determined to be .21. According to Dr. Serne, a .21 blood-alcohol content would cause confusion, lack of coordination, improper judgment of distances and obfuscation of the senses.

Furthermore, Chris Rials testified that defendant was travelling 15 to 20 miles per hour over the speed limit at the point he passed him and that defendant continued to increase the distance between his vehicle and that of Rials as they both drove north on Washington Street. This was shortly before defendant's vehicle collided with that of the deceased. Additionally, the roadway was wet at the time of the accident.

It is clear that defendant, in driving his vehicle 15 to 20 miles per hour in excess of the speed limit, on a wet roadway, while his blood-alcohol content was .21, acted recklessly and that such reckless conduct was likely, under the circumstances, to cause death or great bodily harm to another and did in fact cause the death of another. Based on the evidence, the State proved defendant guilty beyond a reasonable doubt of reckless homicide.

Defendant argues, however, that he did not act recklessly where the tow truck was sitting in his lane with no lights on in a stretch of the road with minimal lighting. In so arguing, defendant relies on *People v. LaCombe* (1982), 104 Ill. App. 3d 66, 432 N.E.2d 672, *People v. Friesen* (1978), 58 Ill. App. 3d 180, 374 N.E.2d 15, and *People v. Crego* (1946), 395 Ill. 451, 70 N.E.2d 578. Each of those cases is distinguishable from the present case, however, in that in those cases there was insufficient evidence to establish recklessness as to the conduct of the particular defendant. Cases of this kind will turn upon the particular facts in the case. (*Friesen*, 58 Ill. App. 3d at 185, 374 N.E.2d at 19.) In the cases relied on by defendant, unlike the instant case, the defendants testified to the circumstances surrounding the occurrence and the conduct of the victim just prior to the occurrence. Despite evidence that McLelland was intoxicated and his tow truck was sitting in the highway without lights, we conclude that the evidence establishes that defendant's reckless actions caused the death of McLelland. We are satisfied that, under the evidence here of defendant's excessive speed under the conditions, his intoxication, and his unobstructed view of the four-lane roadway where McLelland was situated, his recklessness caused the death of the tow truck driver. See *People v. Mikyska* (1989), 179 Ill. App. 3d 795, 802, 534 N.E.2d 1348.

■ Defendant's last contention is that the imposition of a two-year term of imprisonment was an abuse of sentencing discretion. In this regard, defendant argues that the trial judge arbitrarily denied probation because of his feelings about drunk driving cases, did not equally weigh all the necessary factors, and emphasized a factor, the victim's death, which "the legislature already considered in making the defendant eligible for probation." Defendant further emphasizes that, but for a DUI arrest in 1985 for which he successfully completed supervision, he has no prior criminal record and has completely abstained from alcohol following hospital treatment and an after care program voluntarily entered into immediately after the accident. Defendant maintains that he should not be sentenced to the penitentiary and the cause should be remanded for a new sentencing hearing.

Contrary to defendant's assertion, the record does not show that the trial judge arbitrarily denied probation because defendant fell within the trial judge's category of disfavored offenders, as was the case in *People v. Bolyard* (1975), 61 Ill. 2d 583, 338 N.E.2d 168, relied on by defendant. Rather, he considered and weighed factors in aggravation and mitigation and concluded that, based on defendant's prior DUI arrest, his intoxication in this case, and society's concern with the consumption of alcohol by drivers, a sentence of probation or conditional discharge would deprecate the seriousness of the conduct and be inconsistent with the ends of justice. The record does not reflect that the trial judge imposed a penitentiary sentence because of his personal views about alcohol or arbitrarily denied probation. (See *People v. Keyes* (1988), 175 Ill. App. 3d 1013, 1018, 530 N.E.2d 708.) Further, there is nothing in the record to support defendant's statement that the trial judge emphasized a factor which the legislature considered in establishing the penalties.

Finally, we are satisfied that the trial judge weighed all the relevant factors in making his sentencing determination. While the facts that defendant has had a good life prior to this incident and is not likely to repeat his failure are factors to be considered by the trial judge, they are not conclusive. (*People v. Waud* (1977), 69 Ill. 2d 588, 595-96, 373 N.E.2d 1.) We cannot say that the trial judge abused his discretion in imposing a two-year term of imprisonment, the minimum term of imprisonment for a Class 3 felony, in the present case. See *People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.

The judgment of the circuit court of Du Page County is affirmed.

Affirmed.

UNVERZAGT, P.J., and INGLIS, J., concur.