THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL D. KOHL, Defendant-Appellee.

Second District   No. 2—88—0959

Opinion filed December 28, 1989.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Lawrence M. Bauer, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Craig F. Miller and Dennis J. Sopata, both of Miller & Sopata, of Oak Lawn, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

On January 1, 1988, at approximately 7 a.m., defendant, Michael D. Kohl, was the driver of an automobile involved in a head-on collision with a car driven by Garner L. Williams, Jr. The incident resulted in Williams' death. Defendant was initially charged with driving under the influence of alcohol in violation of section 11—501 of the Illinois Vehicle Code (Vehicle Code) (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501). Subsequently, however, defendant was indicted on one count of reckless homicide in violation of section 9—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—3), and the State nol-prossed the charge of driving under the influence. Defendant filed a motion to suppress certain evidence, namely, blood samples extracted from him immediately after the accident. Defendant alleged that he did not consent to the taking of the blood samples and that the police had no probable cause to believe that defendant was intoxicated. The trial court granted the motion to suppress based on its finding that defendant did not consent to the taking of the blood samples. The trial court denied the State's motion to reconsider, and the State now appeals.

The State presented the testimony of three witnesses at the hearing on the motion to suppress evidence. The first witness, Officer Glenn T. Felbinger, testified that he arrived at the scene of the accident shortly after it occurred at about 7 a.m. on January 1, 1988. An

ambulance arrived almost immediately thereafter. The ambulance crew attended to defendant for about 10 or 15 minutes and then took him to Elmhurst Memorial Hospital. After checking on the injuries of the parties involved, Officer Felbinger had a short discussion with a witness to the accident, Dana Morey. Officer Felbinger then drove his squad car to the hospital, where he had occasion to speak with defendant in a cubicle in the emergency room at about 7:45 a.m.

Officer Felbinger described defendant as coherent and responsive. The officer testified that he told defendant that he would read him his rights, that an investigation was being made, and that he would direct hospital personnel to take from defendant blood and urine samples because he felt that defendant had been drinking. While being read his *Miranda* warnings, defendant interrupted Officer Felbinger, telling him that he knew his rights and admitting that he had been drinking. The officer continued reading defendant his rights, and when he finished he again explained that he would have blood and urine samples taken. He told defendant that the purpose of the tests was to determine if he was legally intoxicated. When asked about the circumstances of the accident, defendant told the officer he had been returning home from a party where he had consumed a couple of glasses of champagne. The blood and urine samples were then taken by hospital personnel.

The State's second witness was Elizabeth Schrieber, a registered nurse who worked in the emergency room at Elmhurst Memorial Hospital. She testified that Officer Felbinger was already with defendant when she entered the cubicle. She took the urine sample from defendant, but she did not recall any conversation that may have taken place between defendant and Officer Felbinger. She could not recall whether the officer read defendant his *Miranda* rights.

The next witness for the State was Laura Michelon, a lab technician at Elmhurst Hospital. She testified that when she entered the cubicle, defendant, Officer Felbinger and the nurse were already present. According to Michelon, she heard the officer tell defendant, "We have to take some blood from you. Do you realize this?" Defendant replied, "Yes, I do, but I have only had a few drinks." She never heard the officer give defendant his *Miranda* warnings. Michelon then drew two blood samples for the police and four to six for hospital purposes.

Defendant testified in support of his motion to suppress evidence. He stated that he was not told, either at the scene of the accident or at the hospital, that he had violated any law. He claims that while he agreed to the nurse's request to give a urine sample, he does not re-

member giving, or being asked to give, a blood sample.

The trial court found that defendant was in custody but that he was not informed of the reasons for his custody or "of his right to refuse to give evidence in this case." The trial court also found that defendant did not voluntarily consent to the withdrawal of the blood samples. Based on these findings, the trial court granted the motion to suppress the blood samples because, the court said, they were withdrawn in violation of the defendant's fourth amendment rights. The trial court denied the State's motion to reconsider the ruling, and the State timely filed this appeal in which the following issues are raised: (1) whether defendant must have consented to the blood test in order for the results of the test to be admitted into evidence; (2) whether the trial court's ruling that defendant did not consent was against the manifest weight of the evidence; (3) whether the additional blood samples extracted allegedly for the hospital's own medical purposes are admissible; and (4) whether defendant waived the issue of probable cause.

We first address the issue of consent. The State argues that consent is not required in the case at bar, and thus, defendant's test results are admissible even without his consent. Defendant apparently contends that section 11—501.1 of the Vehicle Code (Ill. Rev. Stat. 1987, ch. 95½, par. 11—501.1) requires consent before a blood test may be completed and that such requirement applies here, where defendant was arrested for DUI but prosecuted for reckless homicide.

■ This court recently addressed this issue and concluded that section 11—501.1 does not apply in such a case. (*People v. Giere* (1989), 192 Ill. App. 3d 520, 525.) In *Giere*, the defendant was arrested for DUI and later charged with reckless homicide. The DUI count was dismissed prior to trial, and the defendant was subsequently found guilty of reckless homicide. On appeal, the defendant argued that section 11—501.1 requires consent before blood may be withdrawn and that the section is applicable in a reckless homicide prosecution following an arrest for DUI.

This court stated that "[a] compulsory blood test, taken without the consent of the donor, does not violate any constitutional right of the donor, and absent a more limiting statutory provision, is admissible as evidence of intoxication." (*Giere*, 192 Ill. App. 3d at 524.) We found that section 11—501.1 does not limit the admissibility of a compulsory blood test in a reckless homicide prosecution and applies only where the statutory summary suspension of the privilege to operate a motor vehicle is involved or at issue. (*Giere*, 192 Ill. App. 3d at 525.) Thus, the ordinary standards of admissibility apply in reckless homi-

cide prosecutions. (*People v. Murphy* (1985), 108 Ill. 2d 228, 234.) Further, even in a DUI prosecution, there is no statutory requirement of consent before blood-alcohol test results may be admitted into evidence. (*Giere*, 192 Ill. App. 3d at 524.) Thus, in the case at bar, the trial court erred when it relied upon *People v. Romano* (1985), 139 Ill. App. 3d 999, and found that defendant's consent was necessary to withdraw the blood samples.

Because we find that defendant's consent was not required in order for the results of the test to be admitted into evidence, we deem it unnecessary to address the State's argument that consent was, in fact, given. Similarly, our finding concerning consent also addresses the admissibility of the blood drawn for hospital purposes, that is, because consent is not required, all the test results are admissible whether taken at the direction of the officer or the hospital staff.

██ █ Next, we address the contention made by defendant that the trial court's finding that defendant's constitutional rights were violated is supported by the fact that "the State never established any reasonable grounds to request the Defendant to submit to any alcohol tests." On a motion to suppress evidence based on a lack of probable cause, the initial burden of going forward with the evidence is on the defendant, not the State. (*People v. Hattery* (1985), 109 Ill. 2d 449, 466; *People v. Wingren* (1988), 167 Ill. App. 3d 313, 319-20.) While defendant raised the probable cause to arrest issue in his pretrial motion to suppress, he did not introduce any evidence of his arrest at the hearing on the motion and objected when the State attempted to do so. Thus, the defendant failed to carry his burden of going forward with the evidence and failed to meet his initial burden of proof. As such, we hold that defendant has waived the issue of probable cause. *Hattery*, 109 Ill. 2d at 466.

For the foregoing reasons, the judgment of the circuit court granting defendant's motion to suppress is reversed, and the cause is remanded for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

UNVERZAGT, P.J., and REINHARD, J., concur.