THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JAMES JONES, Defendant-Appellee.

Second District   No. 2—02—0956

Opinion filed December 5, 2003.

Joseph E. Birkett, State's Attorney, of Wheaton (Neal F. Thompson and Anna B. Harkins, Assistant State's Attorneys, of counsel), for the People.

G. Joseph Weller and Bruce Kirkham, both of State Appellate Defender's Office, of Elgin, for appellee.

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The defendant, James Jones, was charged with aggravated driving under the influence of alcohol (aggravated DUI) (625 ILCS 5/11—501(a)(4), (a)(5), (a)(6), (c—1)(3) (West 2002)). Thereafter, the defendant filed a motion to suppress the results of his blood and urine tests based on the fact that the tests were administered without his consent. The State appeals the June 26, 2002, order of the circuit court of Du Page County granting the defendant's motion to suppress. We affirm.

The relevant facts are as follows. On April 3, 2002, the defendant was involved in a motor vehicle accident. The accident did not involve personal injury or death. As a result of this accident, the defendant was issued several traffic citations and charged with aggravated DUI (625 ILCS 5/11—501(a)(4), (a)(5), (a)(6), (c—1)(3) (West 2002)) and driving while his driver's license was revoked (625 ILCS 5/6—303(a), (d) (West 2002)).

Prior to arresting the defendant on these charges, the arresting police officer had detected a strong odor of alcohol on the defendant's breath and asked the defendant to perform field sobriety tests. The defendant refused and complained of pain in his sternum area. The arresting officer then transported the defendant to Elmhurst Hospital.

At the hospital, the arresting officer read and issued the defendant the warning-to-motorist document. The arresting officer asked the defendant to consent to a collection of blood or urine. The defendant refused to voluntarily give a blood or urine sample. No blood or urine was required for the defendant's medical treatment. Over the defendant's objections, and at the direction of the arresting officer, hospital personnel took blood and urine samples from the defendant, which were analyzed for alcohol and drugs.

On June 6, 2002, the defendant filed a motion to suppress the results of his blood and urine tests. In his motion, the defendant

argued that the test results were inadmissable because his blood and urine were taken without his consent and not in the course of providing him medical treatment. On June 26, 2002, the trial court granted the defendant's motion, finding that the tests were statutorily prohibited by section 11—501.2(c)(2) of the Illinois Vehicle Code (the Vehicle Code) (625 ILCS 5/11—501.2(c)(2) (West 2002)). The State filed a certificate of impairment and timely appealed.

■ Before addressing the merits of the State's appeal, we note that the defendant has filed a motion to strike portions of the State's reply brief. The defendant argues that the State's reply brief contains arguments not made in its appellant's brief, contrary to Supreme Court Rules 341(e)(7) and 341(g) (188 Ill. 2d Rs. 341(e)(7), (g)). Rule 341(e)(7) provides that "[p]oints not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." 188 Ill. 2d R. 341(e)(7). Rule 341(g) provides that "[t]he reply brief, if any, shall be confined strictly to replying to arguments presented in the brief of the appellee and need contain only [a]rgument." 188 Ill. 2d R. 341(g). After reviewing the State's reply brief, we believe that it sufficiently complies with Rules 341(e)(7) and 341(g). The majority of the State's reply brief is responsive to the arguments raised by the defendant in his appellee brief. Accordingly, we decline to strike any portion of the State's reply brief.

Turning now to the merits of the appeal, the State contends that the trial court erred in suppressing the defendant's blood and urine test results. The State argues that, contrary to the trial court's ruling, section 11—501.2(c)(2) does not prohibit nonconsensual chemical testing of suspected impaired drivers. The State further argues that the common law specifically allows nonconsensual chemical testing of suspected impaired drivers.

The history of the legislation and case law relating to chemical testing in driving-under-the-influence cases is a necessary preamble to our resolution of the State's contention. Prior to 1982, the Illinois Vehicle Code required that a suspected impaired driver must consent to a chemical test to determine the alcohol content of his or her blood in order for such test results to be admissible at trial. Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(c)(3). Section 11—501(c)(3) of the Vehicle Code provided in pertinent part:

> "Evidence based upon a chemical analysis of blood, urine, breath or other bodily substance shall not be admitted unless such substance was procured and such analysis made with the consent of the person as provided by this Chapter ***." Ill. Rev. Stat. 1981, ch. 95½, par. 11—501(c)(3).

Effective January 1, 1982, through Public Act 82—311, the

legislature deleted section 11—501(c)(3) of the Vehicle Code, removing the consent requirement, and added section 11—501.2. See Ill. Rev. Stat. 1983, ch. 95½, pars. 11—501(c), 11—501.2. In particular, section 11—501.2(c) states:

"If a person under arrest refuses to submit to a chemical test ***, evidence of refusal shall be admissible in any civil or criminal action or proceeding arising out of acts alleged to have been committed while the person under the influence of alcohol, or other drugs, or combination of both was driving or in actual physical control of a motor vehicle." Ill. Rev. Stat. 1983, ch. 95½, par. 11—501.2(c) (now 625 ILCS 5/11—501.2(c)(1) (West 2002)).

Subsequent to the enactment of Public Act 82—311, this court ruled in *Village of Algonquin v. Ford*, 145 Ill. App. 3d 19, 21 (1986), that absent a limiting statutory provision, there is no prohibition against the taking of an involuntary blood, urine, or breath sample from an alleged intoxicated driver. We relied on the principle enunciated in *Schmerber v. California*, 384 U.S. 757, 764, 16 L. Ed. 2d 908, 916, 86 S. Ct. 1826, 1832 (1966), and *People v. Todd*, 59 Ill. 2d 534, 544 (1975), that a compulsory, nonconsensual chemical test does not violate any constitutional rights, so long as probable cause exists that the individual from whom the bodily sample is taken has committed the offense of driving under the influence of alcohol, drugs, or a combination of both. Thereafter, several courts ruled conformably with *Ford*. See *People v. Ayres*, 228 Ill. App. 3d 277, 279 (1992) (consent is not a prerequisite to the admissibility of chemical test results in driving under the influence prosecutions); *People v. Byrd*, 215 Ill. App. 3d 468, 471 (1991) (same); *People v. Yant*, 210 Ill. App. 3d 961, 963 (1991) (same); *People v. Franciskovich*, 202 Ill. App. 3d 693, 695 (1990) (same); *People v. Giere,* 192 Ill. App. 3d 520, 524 (1989) (same); *People v. Brown,* 175 Ill. App. 3d 725, 729 (1988) (same).

■ However, effective January 1, 1995, the legislature enacted Public Act 88—632, which added section 11—501.2(c)(2) to the Vehicle Code. This section currently provides:

"Notwithstanding any ability to refuse under this Code to submit to these tests or any ability to revoke the implied consent to these tests, if a law enforcement officer has probable cause to believe that a motor vehicle driven by or in actual physical control of a person under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof has caused the death or personal injury to another, that person shall submit, upon the request of a law enforcement officer, to a chemical test or tests of his or her blood, breath or urine for the purpose of determining the alcohol content thereof or the presence of any other drug or combination of both." 625 ILCS 5/11—501.2(c)(2) (West 2002).

Section 11—501.2(c)(2) specifically authorizes nonconsensual chemical testing in instances where a police officer has probable cause to believe that a person was driving a motor vehicle under the influence of alcohol and caused death or personal injury to another. *People v. Ruppel*, 303 Ill. App. 3d 885, 892 (1999). The question before us now is whether, in doing so, section 11—501.2(c)(2) prohibits nonconsensual chemical testing in instances that do not involve death or personal injury. As a matter of first impression, we conclude that it does.

█ The primary rule of statutory construction is to ascertain and give effect to the legislature's intent. *People v. Woodard*, 175 Ill. 2d 435, 443 (1997); *In re Application for Judgment & Sale of Delinquent Properties for the Tax Year 1989*, 167 Ill. 2d 161, 168 (1995). To determine the legislature's intent, a court should first look to the statute's plain language and accord the language its plain and commonly understood meaning. *Department of Public Aid ex rel. Davis v. Brewer*, 183 Ill. 2d 540, 554 (1998); *Woodard*, 175 Ill. 2d at 443. The court must not read into the plain language exceptions, limitations, or conditions that the legislature did not intend. *Klem v. First National Bank*, 275 Ill. App. 3d 64, 67 (1995). The statute should be read as a whole and construed so that no word, phrase, or section is rendered meaningless or superfluous. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 189 (1990). An issue of statutory construction is a question of law to which we apply a *de novo* standard of review. *Brewer*, 183 Ill. 2d at 554.

Where the legislature's intent is not clear from the statute's plain language, it is appropriate to examine the legislative history. *People v. Hickman*, 163 Ill. 2d 250, 261 (1994). Additionally, where the statute is ambiguous, other rules of statutory interpretation may be employed. *People v. Olsson*, 335 Ill. App. 3d 372, 374 (2002). One such rule is the principle of *expressio unius est exclusio alterius*, which means that the expression of one thing implies the exclusion of others. *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 152-53 (1997). This maxim should be applied only when it appears to point to the intent of the legislature. *Aldridge*, 179 Ill. 2d at 153-54. On the other hand, this rule should not be applied where there exists an indication that its application would defeat the legislature's intent. *Aldridge*, 179 Ill. 2d at 154.

█ Here, section 11—501.2(c)(2) explicitly authorizes the nonconsensual administration of chemical tests in driving-under-the-influence cases where the suspected impaired driver has caused death or bodily injury to another. *Ruppel*, 303 Ill. App. 3d at 892. However, it does not explicitly authorize or prohibit nonconsensual chemical testing of a suspected impaired driver in other situations. As the legislature's intent cannot be determined from the plain language of section 11—

501.2(c)(2), we apply the principle of *expressio unius est exclusio alterius*. In doing so, we conclude that by enumerating certain situations where an alleged intoxicated driver can be subjected to nonconsensual chemical testing, the legislature was implicitly excluding all other situations.

Our determination is consistent with the legislative history and case law relating to nonconsensual chemical testing in driving-under-the-influence cases. As previously mentioned, prior to the enactment of Public Act 88—632, nonconsensual chemical testing of a suspected impaired driver was permissible in all circumstances. *Ford*, 145 Ill. App. 3d at 21. Nonconsensual chemical testing does not violate an individual's constitutional rights so long as a police officer has probable cause to believe that the individual was operating a motor vehicle under the influence of alcohol, drugs, or both. *Schmerber*, 384 U.S. at 768, 16 L. Ed. 2d at 918, 86 S. Ct. at 1834; *Todd*, 59 Ill. 2d at 544. By way of Public Act 88—632, the legislature added section 11—501.2(c)(2) to the Vehicle Code, which explicitly authorizes the nonconsensual chemical testing of a suspected impaired driver where the driver has caused death or bodily injury to another. However, because this was already permissible before the enactment of Public Act 88—632, we can only conclude that by adding section 11—501.2(c)(2), the legislature intended to prohibit nonconsensual chemical testing of a suspected impaired driver in situations that did not involve death or bodily injury. To rule otherwise would reduce section 11—501.2(c)(2) to meaningless surplusage and render the passage of Public Act 88—632 pointless. This we decline to do.

We are mindful that our interpretation of section 11—501.2(c)(2) will make enforcement of our driving-under-the-influence laws more difficult. However, we are bound by the language and the legislative history of the statute. We encourage the legislature to revisit section 11—501.1(c)(2) and to consider the provision's effect on public safety.

In conclusion, the defendant in this case was subjected to nonconsensual chemical testing. Because he did not cause death or personal injury to another, the trial court properly excluded the test results.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

HUTCHINSON, P.J., and BYRNE, J., concur.